In the Matter of Charles Douglas
FORD, and Clara Lou
Ford, Debtors.

In the Matter of C & L ROOFING
CO., INC., Debtor.

UNITED UNION OF ROOFERS, WAT-
ERPROOFERS AND ALLIED WORK-
ERS LOCAL UNION NO. 20; Roofers
Local No. 20 Pension Fund; Roofers
Local No. 20 Health and Welfare Fund;
and Roofers Local No. 20 Apprentice-
ship Fund, Applicants,

v.

Charles Douglas FORD, and Clara Lou
Ford, and C & L Roofing Co., Inc.,
Respondents.

Bankruptcy Nos. 82–03539–1–3,
82–03739–2–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

May 29, 1984.

Patrick White, Kansas City, Kan., for applicants.

William T. Bernard, Kansas City, Mo., for respondents.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING APPLICATION FOR CONSOLIDATION OF ENTITIES

DENNIS J. STEWART, Bankruptcy Judge.

In the application at bar, a creditor of the debtors in these cases requests that other entities be brought into these bankruptcy proceedings and their assets accordingly collected and distributed to the creditors of the within debtors.[1] By means of its order entered on October 11, 1983, this court set its hearing for October 27, 1983, stating that, "[i]f substantive consolidation is to be directed, it is incumbent upon the applicants to prove the virtual identity of the debtors' assets and liabilities or their hopeless intermingling or the treating of one entity as the sole property of the others."[2]

The parties subsequently sought a continuance of the hearing on the grounds that an interchange of discovery was necessary of a great multitude of documents which would be adduced in evidence. The court therefore conducted a conference of counsel and entered its order on October 31, 1983, resetting the hearing for January 9, 1984, and further providing for the interchange of summaries of the *contents* of voluminous documents and also providing for the parties' opportunity to object to the admissibility of the adverse party's respec-

1. The other entities which have warranted mention by the applicants include the alleged successors of C & L Roofing Co., Inc., which are known as the Guaranteed Roofing Company and Built-Up Roofing. The applicants also appear to request that the bankruptcy estates of the individual debtors Ford and that of the corporate debtor, C & L Roofing Co., Inc., be consolidated and treated as one.

2. The fundamental standards governing consolidation are succinctly set out in 4A Collier on Bankruptcy ¶ 70.15, p. 138, n. 14 (1976), as follows:

"There is no doubt of the power of the bankruptcy court, in the exercise of its equitable jurisdiction, to disregard corporate entities in appropriate cases by authorizing the administration of the assets of an individual and a corporation or of two or more corporations in a single proceeding ... Where a corporation is no more than an instrumentality of the bankrupt or the bankrupt has failed to distinguish between property and transactions of the bankrupt and those of a wholly owned or closely affiliated corporation, it appears justifiable to treat the bankrupt's trustee as titleholder of the corporation's property."

tive summaries prior to trial.[3] The court, in conducting the pretrial conference of counsel, made it clear that the summaries were to be of the *contents* of voluminous documents in accordance with Rule 1006 of the Federal Rules of Evidence.

Such summaries as were served and filed, however, described only the documents which might be adduced in evidence and did not summarize their contents.[4] Consequently, they gave little or no indication of the factual basis of the application, and thus did much to defeat the court's purpose in invoking Rule 1006, *supra,* and requiring summaries thereunder.

Then, at the trial of this matter, conducted by the court on the dates of January 9 and 18, 1984, the applicants adduced the documents, rather than the summaries in evidence, as was contemplated neither by the court nor Rule 1006, *supra,* and wholly defeated the purpose of requiring the composition and interchange of summaries in the first place.[5] The underlying documents were, further, adduced in an order and manner, the intelligibility of which was quite difficult to discern. Consequently, at the conclusion of the trial, the court had before it only what it had hoped to prevent by issuance of the pretrial order, a large mass of unrefined and unexplained documents now filed in several large boxes. The court consequently announced at the conclusion of the hearing that it would be necessary for the applicants to render the mass of chaotic documentary evidence intelligible by means of their posthearing brief.

Again, however, the applicants' posthearing brief is purely general and conclusionary in character and makes absolutely no reference to the particular items of evidence which support the general and conclusionary contentions therein made. The first general contention made in support of substantive consolidation in the applicants' posthearing brief is to the effect that:

> "[t]he evidence was clear that the bank account of C & L Roofing Company, Inc., was an individual account which at no time was ever converted to a corporate account and all of the money in the account was, in effect, the personal assets of Charles and Clara Ford. Consequently, there being no separate account, the inference is compelling that there was no true regard for the corporate entity."

Such evidence as was adduced on this issue, however, does not clearly show that the corporate bank account was used solely or in substantial part for the benefit or purposes of the individual debtors. The debtors deny the use of the corporate bank account for their own purposes and that they comingled corporate and individual funds therein in such a manner that it blurred the distinction between the entities as to the character of the bank account.[6]

---

**3.** In the course of the pretrial conference which was then held, the court was explicit in its direction to respective counsel that the summaries, in order to be useful, should be summaries of the *contents* of voluminous documents in accordance with Rule 1006 of the Federal Rules of Evidence. And, to fulfill the purpose of that rule, the court provided for pretrial exchange of summaries with an opportunity for each party to object to the admissibility of the summary and its underlying constituents. See *United States v. Smyth,* 556 F.2d 1179, 1184 (5th Cir. 1977): "It would seem, though, that because summaries are elevated under Rule 1006 to the position of evidence care must be taken to omit argumentative matter in their preparation lest the jury believe that such matter is itself evidence of the assertion it makes ... We think that the framers of the rule clearly contem-

plated a pre-trial resolution of any issues that may be raised concerning the use of summaries." The object was to obviate the necessity for the court's having to sift through a mass of unintelligible documents. But the summaries presented were, for the most part, simply lists of underlying documents which were themselves offered in evidence, thus almost totally defeating the purpose of the pretrial procedure.

**4.** See note 3, *supra.*

**5.** See note 3, *supra.*

**6.** The testimonial evidence which was adduced on the issue of common use of bank accounts and common responsibility for bank loans was as follows: (1) Gordon Thomas Brown, vice president of the Boatmens Raytown Bank, testi-

And the applicants' evidence, perhaps because of manner of its presentation, does

fied that, on October 1, 1982, the debtors Charles and Clara Ford were extended credit in the sum of $82,279.63, which consisted of a consolidation of several loans previously made variously to C & L Roofing Co., Inc., and the Fords; that the loan was secured by a deed of trust on real property located at 4525 Westridge owned by Charles D. Ford and Clara Ford; that, prior to May 6, 1976, a checking account with the bank was in the name of the Fords d/b/a C & L Roofing; that on that date, after incorporation of C & L Roofing, the signature card still retained the Fords as authorized signatories and added the name of Anthony J. Tarrentino; that the consolidation which then took place in the names of the individuals came after the corporate loans were in default and the bank had threatened to foreclose; that, in net substance, it resulted in the individual debtors' property being taken as security for corporate and individual loans; and that, in his experience, it is not unusual for corporate officers and stockholders to consolidate corporate loans in their individual names when corporations are in default. (2) James Blair Allen of the Blue Ridge Bank and Trust Company testified that, as of October 1982, there existed a corporate account at his bank on which the Fords were the authorized signatories; that, in October of 1982, a check in the sum of $300.00 drawn on the Southgate Bank and Trust Co. and payable to C & L Roofing Co. was deposited in the account of Guaranteed Roofing despite the fact it carried the legend of "paid in full for roofing"; that another check in the sum of $424.50 to C & L Roofing was endorsed by Clara Ford in the name of C & L Roofing and deposited into the account of Guaranteed Roofing; that a check from the State of Kansas to C & L Roofing Co. in the sum of $2,216.69 was also deposited in the account of Guaranteed Roofing; that checks from ADE Lumber and Supply Company to Guaranteed Roofing in the sums of $4,438.87 and $1,103.67 were deposited in the same account; and that a check from ADE to Built-Up Roofing in the sum of $7,786.00 was deposited in the same account.

In reviewing this evidence, the court must be mindful that "[d]isregard of corporate lines is not the rule ... and the burden of establishing the necessity for such action by the bankruptcy court to avoid fraud or injustice rests on the trustee [or other applicant]." 4A Collier on Bankruptcy ¶ 70.15, p. 139, n. 14 (1976). Further, there is a potential for unfairness to creditors who may have dealt with only one entity and who may, as a result of consolidation, be required to share their dividends with creditors of other entities. Accordingly, the courts have established that a high burden of proof must be applied on applications for consolidation. "[T]he propriety of consolidation depends upon

not establish such blurring as to make the entities indistinct.[7]  Monies which may

substantive considerations and affects the substantive rights of the creditors of the different estates." Advisory Committee's Note to former Rule 117 of the Rules of Bankruptcy Procedure. "The power to consolidate should be used sparingly because of the possibility of unfair treatment of creditors of a corporate debtor who have dealt solely with that debtor without knowledge of its interrelationship with others." *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2d Cir.1966). "[T]he state of ... intercompany accounts must be ascertained to the extent that it is possible ... If there is to be a consolidation, it has to await the answers to a number of questions." *Matter of Gulfco Inv. Corp.,* 593 F.2d 921, 930 (10th Cir.1979). This evidence, viewed under these standards, cannot be considered as anything approaching the type and quantum necessary to warrant consolidation. The consolidation of corporate and individual loans so that individual property becomes available for security on both is insufficient as a predicate for consolidation. *The material question is whether one or the other of the entities actually paid the indebtedness from its own assets or paid amounts disproportionate to the degree of its liability.* On this crucial question, however, the evidence is lacking. It is only shown that the current balance is $63,066.63, but no evidence has been intelligibly offered on the entity or entities from which the payments came. And, even if it were, as noted in the text of this memorandum, where it is possible to establish with some precision the credits and debits between entities, their consolidation is not the preferred remedy.

The same basic principles apply to evidence that checks made to C & L Roofing went into the bank account of other entities which were not later, with C & L and the Fords, put in these bankruptcy proceedings. The evidence of the transactions tends to show precisely what happened and also to show the interrelationships of the entities without rendering those entities indistinct. The remedy for the diverting of payments from an entity soon to go into bankruptcy is *a suit by the trustee to recover these monies or property* under sections 544–550 of the Bankruptcy Code. It is not, without a great deal more, grounds for consolidation of the entities.

7. From the evidence which was adduced, it is apparent that the Fords and Guaranteed Roofing have carried on, after the date of bankruptcy, the business formerly conducted by the Fords and C & L Roofing Co., Inc. In this regard, much is attempted to be made of the fact that the business continues under the name of Guaranteed Roofing at the same location and with the same telephone number as that formerly utilized by C & L Roofing Co., Inc. But this

have been placed in the corporate account by the individual debtors may well be considered as capital contributions or investments in the corporation.[8] Payments to or for the benefit of the individuals might well be salaries or other merited remuneration.[9] The evidence adduced does not tend to disprove these possibilities, nor demonstrate that it would not be possible to make a determination as to which monies in the account should be regarded as corporate monies and which should be regarded as the monies of the individual debtors.[10] Under such circumstances, it cannot be said that the evidence respecting "comingling of funds in the corporate bank account is probative of the substantive or virtual identity of the corporate debtors so as to require a conclusion that all their assets and debts are the same."

■ It is next contended by the applicants that, "[i]n addition to the massive comingling of funds above mentioned, subsequent to the purported closing of the corporate roofing business, funds made payable to the corporation were deposited in yet another personal account of Clara Ford under the name of Clara Ford, d/b/a Guaranteed Roofing Company." Such evidence as was adduced on this issue, however, only tends to show that such monies were paid to the successor of the debtor corporation as the debtors corporation's trustee in bankruptcy might properly require to be turned over to him.[11] But such evidence does not establish the identity, or substantial identity, of C & L Roofing Company, Inc., Clara Ford, and Guaranteed Roofing Company.[12]

■ The applicants next advert to the fact that "a large loan, which included both corporate and personal obligations, was consolidated into a single loan in favor of Boatmen's Bank of Raytown wherein the individuals, Charles and Clara Ford, were the debtors and further that the loan was secured by a second mortgage on the personal residence of Charles and Clara Ford." The assumption of one of the corporate debts by the individuals, however, albeit one of some magnitude,[13] does not, even in combination with the foregoing circumstances,[14] warrant a finding that all assets and debts of the entities were the same or substantially the same.

It is next suggested in the posttrial brief of the applicants that two other entities, Guaranteed Roofing and Built-Up Roofing, are substantially identical with the debtor. In respect of Guaranteed Roofing, it is said:

"Charles and Clara Ford have through their conduct and by the admissions of Charles Ford admitted a business relationship with Guaranteed Roofing and Built-Up Roofing. Both of these entities are engaged in the same business as the corporate bankrupt. Guaranteed Roofing, in fact, was operated by Clara Ford up to the time of the incorporation which occurred almost simultaneously with the filing of the bankruptcies and is now apparently owned on paper by the Ford's daughter, Lisa. Most, if not all of the

---

is no affront to the bankruptcy laws, which have as one of their premier purposes, the permitting of a bankrupt to continue in business so long as all assets of the bankruptcy possessed as of the date of bankruptcy are brought into the bankruptcy estates. If such assets have not been brought in, it is a dereliction of the trustee. But, without better and more sharply honed evidence than has been adduced in this matter, it cannot constitute a basis for substantive consolidation.

8. But, as is observed in note 6, *supra,* the evidence in this case is not sufficiently intelligible to permit any inference that *assets* have actually been transferred between the Fords and C & L Roofing Co., Inc.

9. See note 6 and 8, *supra.*

10. See note 6, *supra.*

11. See note 6, *supra.*

12. See note 6 and 7, *supra.*

13. See note 6, *supra.*

14. None of the facts outlined by the evidence tends to establish either that (1) the lines between entities were blurred or indistinct or (2) they have the same debts and assets. The fact that there were many inter-entity transfers and transactions, some of which may be prohibited by the bankruptcy laws, does not lay a groundwork for consolidation.

assets of Guaranteed Roofing, are assets that were formerly owned by C & L Roofing and, in fact, the telephone number is the same number as was formerly held by the individuals Charles and Clara Ford and the current address of Guaranteed Roofing is the residence of Charles and Clara Ford.

"The other entity, Built-Up Roofing is operated by a James P. Sullivan, who for a considerable period of time before and after the formation of Built-Up Roofing was a salaried employee of C & L Roofing, being paid out of the C & L account which, as alluded to earlier, was a personal account of Charles and Clara Ford. Built-Up Roofing was not a competitor but was instead another entity in the control of the Fords to operate in a capacity of bidding roofing contracts at non-union scale. Here again is an example of an illicit partnership where the only apparent common ground is the relationship between the individual bankrupts and James P. Sullivan and the allowance of another corporation to engage in business which could be performed by C & L indicates disregard of the corporate identity in violation of the corporate opportunity doctrine."

██ If assets of C & L Roofing Company, Inc., however, were fraudulently or preferentially transferred to Guaranteed Roofing, they may be recovered by the trustee in bankruptcy of C & L Roofing Company, Inc.[15] But the substantial identity of debts and assets is in no wise established by such evidence as has been adduced on this issue. The decisional authorities which govern the issue of substantive consolidation are clear to the effect that bankruptcy courts must require a high degree of proof on the issue, lest the rights of creditors of the entity whose assets are sought to be brought into bankruptcy are violated by requiring them without good cause to participate in those assets only *pro rata* with other creditors.[16] The evidence suggested by the foregoing consideration does not permit the court to order consolidation consistently with the rights of the creditors of Guaranteed Roofing, when the evidence does not indicate that they are the same as the creditors of the other entities herein.

The same principles apply to the evidence adduced and contentions presented in respect to Built-Up Roofing, which the applicants summarize in their post-hearing brief as quoted above.

If there has been an appropriation of corporate opportunities by other related entities, the appropriate remedy is a suit by the trustee in bankruptcy.[17] The court searches through the mass of unexplained and disordered documentation which has been presented as the evidence in this case for the type of clarity and cogency which is necessary to consolidate entities.[18] It does not exist. And it is not a sufficient predicate for substantive consolidation that, if such consolidation were ordered, the trustee could more easily investigate the links among the various entities. According to the law, those links must be established *before* consolidation and not after.

It is therefore

ORDERED that the within motion for consolidation be, and it is hereby, denied.

---

15. Under the governing statutes of limitation, there is still ample time for the trustee to recover from the Fords or Guaranteed Roofing or Built-Up Roofing any assets which they may unlawfully be withholding from the bankruptcy estates. See §§ 546(a), 549(d). This principle may also apply to admitted loans and transfers between the Fords and Built-Up Roofing.

16. See note 6, supra.

17. See notes 6, 7 and 14, *supra.*

18. See note 6, *supra.*