In the Matter of NEW CENTER
HOSPITAL, Debtor.

Basil T. SIMON, Trustee, and
United States of America,
Plaintiffs–Appellees,

v.

NEW CENTER HOSPITAL, Park Community Hospital d/b/a New Center Hospital, Central City Health Services, Inc.,
New Center Clinic—East, Inc., New Center Clinic—West, Inc., New Center Clinic—Central, Inc., Detroit Medical
Health Facility, Inc., New Center Managed Care, Inc., Detroit Medical and
Surgical Center, P.C., Central City
Health Services Clinic, Defendants–Appellants.

No. 94–CV–72776–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 3, 1995.

Jay N. Siefman, Farmington Hills, MI, for New Center Hospital.

Jerome D. Frank, Jay N. Siefman, Farmington Hills, MI, for Park Community Hospital, Central City Health Services, Inc., New Center Clinic–East, Inc., New Center Clinic–West, Inc., New Center Clinic–Central, Inc., Detroit Medical Health Facility, Inc., New Center Managed Care, Inc. and Detroit Medical and Surgical Center, P.C.

Robert A. Weisberg, Carson, Fischer & Potts, Birmingham, MI, for Basil T. Simon, Trustee.

Karen A. Smith, U.S. Department of Justice, Tax Division, Washington, DC, Lynn M. Brimer, Internal Revenue Service, District Counsel, Detroit, MI, Julia C. Pidgeon, United States Attorney's Office, Detroit, MI, for U.S.

John C. Dougherty, Dougherty, Schneider & Miller, P.C., Detroit, MI, for Urgent Care Physicians, Inc.

*MEMORANDUM OPINION AND ORDER*

HOOD, District Judge.

*INTRODUCTION*

The Appellants (New Center Hospital, Park Community Hospital d/b/a New Center Hospital, Central City Health Services, Inc., New Center Clinic—East, Inc., New Center Clinic—West., Inc., New Center Clinic—Central, Inc., Detroit Medical Health Facility, Inc., Detroit Medical and Surgical Center, P.C., Central City Health Services Clinic, and New Center Managed Care, Inc.) sought appeal from a decision by the Honorable Ray Reynolds Graves, of the United States Bankruptcy Court for the Eastern District of Michigan. Judge Graves entered an order on July 18, 1994, granting summary judgment, pursuant to Fed.R.Civ.P. 56, to the Appellees, the United States and the Trustee in Bankruptcy for New Center Hospital. The decision of the Bankruptcy Court substantively consolidated the non-debtor Appellants, as alter egos of New Center Hospital, with the bankruptcy estate of the Debtor, New Center Hospital. Appellants appeal to the District Court pursuant to 28 U.S.C. § 158 and Fed.R.Bankr.P. 8001(a).

*PROCEDURAL HISTORY*

New Center Hospital, the Debtor in the bankruptcy, sought the protection of the Bankruptcy Court by filing Chapter 11 proceedings in April, 1993. The United States, the largest creditor of the Debtor, engaged in extensive discovery. Following discovery, the United States (on behalf of the Internal Revenue Service and The Department of Housing and Urban Development) commenced an adversary proceeding seeking substantive consolidation of the non-debtor Appellants. The Trustee of the Chapter 11 Estate of New Center Hospital joined in this action.

On March 30, 1994, Appellants filed a Motion to Dismiss pursuant to Fed.R.Bankr.P. Rules 7037 and 7056 for failure of the Appellees to comply with discovery. The Motion to Dismiss was granted on April 11, 1994. On July 12, 1994, the Bankruptcy Court set aside the dismissal granting the United States Motion to Amend and Alter the Judgment. Also on March 30, 1994, the same day the Appellants' Motion to Dismiss was filed, the United States filed its Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, which was joined by the Trustee. On July 18, 1994, the Motion for Summary Judgment was granted, substantively consolidating the non-debtor Appellants into the Bankruptcy estate. The order granting the Motion was entered on August 2, 1994 and gave immediate effect *nunc pro tunc* to the date of the appointment of the Trustee.

On appeal, Appellants seek dismissal of the Complaint. Urgent Care Physicians, Inc., an unsecured creditor of Defendant New Center Clinic—East, Inc. ("NCC–East"), filed a Motion to Intervene on appeal which the District Court denied. However, the Court permitted Urgent Care to file a brief amicus curiae.

Appellants' Claims on Appeal are:

1. The United States, as creditor of the Debtor New Center Hospital, lacks standing to bring this Adversary Proceeding.

2. Due process requires notice to affected creditors of the Appellants when substantive consolidation is sought.

3. The Bankruptcy Court has no jurisdiction to substantively consolidate the non-debtor Appellants with the Debtor.

4. A genuine issue of material facts exists regarding whether or not Appellants are alter egos of the Debtor supporting substantive consolidation.

5. Assuming the Bankruptcy Court properly concluded that the Appellants were alter egos, the Bankruptcy Court erred in finding that there was was sufficient indicia to establish a basis for substantive consolidation.

6. The Bankruptcy Court erred in issuing its Order for substantive consolidation *nunc pro tunc*.

7. The Bankruptcy Court erroneously granted Appellee's Motion to Alter or Amend the Judgment dismissing the Complaint and erred by not granting the Appellants' Motion to Dismiss.

*FACTUAL BACKGROUND*

The Bankruptcy Court found the following facts were not genuinely in dispute. *Bankr. Op. at pgs. 2–5.* This Court sets forth those

facts verbatim (including footnotes) from the Bankruptcy Court Opinion:

The Debtor in this matter, New Center Hospital's presence in this case began involuntarily. After mounting tax obligations owed to the United States and upon a seizure of certain books and records of the Debtor, the Debtor's largest creditor, by its action, caused the Debtor to seek the protection of the Bankruptcy Court by filing a Chapter 11 petition.

After extensive discovery disputes, resulting in this Court's orders to compel discovery and upon endless discovery, the United States filed its complaint seeking the substantive consolidation of the non-debtor defendants' assets into the debtor's Chapter 11 bankruptcy estate.[1]

On July 6, 1983, Harold Murdock, Paul Davidson and Leonard Hyman incorporated Central City Health Services (CCHS). Murdock, Davidson and Hyman were members of the New Center Board (NCH) Board of Trustees and when CCHS was incorporated. On April 5, 1985, Tom Barrow, Harold Murdock and Paul Davidson incorporated New Center Clinic—East, Inc. ("NCC–East"), and New Center Clinic—Central, Inc. ("NCC–Central"). On August 7, 1985, Barrow, Murdock and Davidson incorporated New Center Clinic—West, Inc. ("NCC–West"). (Hereinafter NCC–East, NCC–West and NCC–Central shall at times be referred to collectively as "the Clinics.")

In January, 1986, with board approval, NCH transferred approximately $1,200,-000.00 to CCHS for the acquisition of clinics intended to feed patients to NCH. One of the clinics was Detroit Medical and Surgical Center, P.C. (DMSC), which operated out of the facilities located at 8300 Mack Avenue, Detroit, Michigan. After the acquisition, DMSC became New Center Clinic—East, Inc. A clinic, located within NCH's physical plant located at 801 Virginia Park, Detroit, Michigan, was also acquired. This became the NCC–Central clinic. Finally, a doctor's practice was purchased at a third location and established as the NCC–West Clinic.

The following facts are crucial to the outcome of this case. Loan documents were never executed in connection with the transfer of monies by NCH to CCHS for the purchase of the Clinics. The NCH audited financial statements for the subsequent years identifying the transfers to CCHS for the purchase of the Clinics as unsecured non-interest bearing loans to CCHS' parent company. Following the purchase of the Clinics, NCH continued to transfer monies to CCHS. CCHS then transferred funds to the various clinics allegedly in order to finance their operations. The failure to repay the above stated loan obligation has been verified by deposition testimony.[2]

Since January of 1985, the Defendants have been under the same management and control. During all years at issue, the Defendants were all ultimately under the control of the same managing officer who took responsibility for the maintenance of the day-to-day operations and financial affairs of all defendants. Defendants essentially disregarded the corporate entities of the respective corporations in its operation of the hospital and clinics. The assets and operations of the Defendants have been extensively commingled. As evidenced by the deposition testimony, money was transferred from NCH to CCHS whenever CCHS or the Clinics needed funding. Particularly troubling is the fact that after November, 1989, NCH engaged in banking activities which not only resulted in commingling of its funds with those of the

---

**1.** Plaintiff seeks to consolidate the estate of New Center Hospital, Park Community Hospital, d/b/a New Center Hospital, Central City Health Services, Inc., New Center Clinic—East, Inc., New Center Clinic—West, Inc., New Center Clinic—Central, Inc., Detroit Medical Health Facility, Inc., New Center Managed Care, Inc., Detroit Medical and Surgical Center, P.C., New Center Clinic—Central, Inc., d/b/a Central City Health Services Clinic and Alfred Moore.

**2.** Moore stated that a $500,000.00 payment identified in a financial statement for 1986 was a return of the unused portion of the original transfer. There has not been payment by CCHS to NCH of funds generated by CCHS operations. Barrow, Murdock and Moore could not recall CCHS making any payments to NCH for the funds transferred for the purchase of the clinics.

other Defendants, but apparently in an effort to defraud its creditors and to avoid the payment of its legal obligation.[3]

Other demonstrations of defendants acting in total disregard of the corporate entities is reflected by NCC–East maintaining its funds in an account in the name of DMSC, although DMSC was not an assumed name of NCC–East.[4] The checks on the NCC–Central account had the name Central City Health Services–Clinic, Inc., embossed on them. Central City Health Services–Clinic, Inc., was not an assumed name of NCC–Central.

Post-petition activity on the part of defendants continued this shameful conduct. Even after the filing of the bankruptcy, NCH continued to pay for the printing supplies for NCC–East.

Creditors of both NCC–East and NCH maintained only one account on behalf of both entities. As evidenced by the retained consultant engaged to protect the interests of both NCH and NCC–East, charging only a single monthly retainer for the services provided to both NCC–East and NCH. There was no differentiation on the account for the services provided to NCC–East or for the services provided to NCH.

As the following examples highlight, the operations of the Defendants were also extensively commingled. The Board of Trustees of NCC–East, NCC–West and NCC–Central were appointed by the CCHS Board. Four of the seven members of the Detroit Medical Health Facility Board of Trustees were appointed by CCHS. This collusive activity extended to Defendants sharing certain employees.

Certain NCH employees, specifically, a van driver and administrative assistant were shared by all Defendants. Apparently, even the premiums for the physical plant located at 8300 Mack Avenue, ostensibly the NCC–East location, was mounted in the name of CCHS. Similarly, the automobile insurance for the vehicle used by the facility located at 8300 Mack Avenue was maintained in the name of DMSC.

## DISCUSSION

### STANDARD OF REVIEW

■ The standard of review for questions of law determined by the Bankruptcy Court is de novo. *In re Caldwell,* 851 F.2d 852 (6th Cir.1988). Questions of fact determined by the Bankruptcy Court are reviewed under a clearly erroneous standard. *In re Charfoos,* 979 F.2d 390, 392 (6th Cir.1992). The Court must give due regard to the Bankruptcy Court's ability to judge the facts presented. *In re H.J. Scheirich, Co.,* 982 F.2d 945 (6th Cir.1993); Fed.R.Bankr.P. 8013. The clearly erroneous standard is also applied to matters within the Bankruptcy Court's discretionary powers. The "clearly erroneous" standard has been interpreted to mean that the reviewing court has a definite and firm conviction that a mistake has been made, not only that a different result could have been reached. *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395–96, 68 S.Ct. 525, 542, 92 L.Ed. 746, *reh'g denied,* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (1948).

■ The Sixth Circuit has ruled that if an issue is a mixed question of law and fact, then the court must break the issue into its constituent parts and apply the appropriate

---

**3.** For example, with Board approval, after its creditors began garnishing the NCH bank accounts, NCH transferred its money to an account maintained in the name of CCHS.

A levy or garnishment served upon a bank will only reach the accounts maintained in the name of the party whose liabilities are being collected. (Moore Dep. Vol. I, p. 100) Therefore, a levy or garnishment served on a bank for the collection of NCH liabilities will not reach money maintained in an account in the name of CCHS.

It should be also noted that, in a further attempt to avoid the payment of its legal obligations, NCH opened checking accounts at the Huntington Bank and OMNI Bank after its credi-

tors began serving garnishments and levies on Michigan National Bank. (Broach, Dep. pgs. 142–43) NCH also maintained its funds in the form of cashiers' checks in an effort to keep its funds free from garnishment and levy.

**4.** The withholding liabilities for NCC–East accrued under the East employer identification number. If the IRS served a levy upon the area banks for collection of the East liabilities, it would not reach an account maintained in the name of DMSC. The same would be true for judgment creditors of East serving garnishments for the collection of their judgments.

standard of review to each part. The Court stated that the standard of review for a bankruptcy court's grant of summary judgment is de novo. *In re Batie,* 995 F.2d 85 (6th Cir.1993).

### STANDING

■ The Appellants correctly state that the United States of America, on behalf of its agencies, the Internal Revenue Service and The Department of Housing and Urban Development, has no standing to allege an alter ego theory except in extraordinary circumstances. *In re Guyana Dev. Corp.,* 168 B.R. 892 (Bankr.S.D.Tex.1994). Only the trustee, on behalf of the estate, may assert an alter ego theory without an order of the Court.

Appellants argue that the United States is only trying to improve its own status as a creditor and is not concerned with garnering assets for the benefit of all creditors, since the amount of money owed the United States will effectively bar recovery by other creditors. In *In re Guyana,* the Court noted:

'[P]laintiff, by attempting to assert the Trustee's causes of action, is concerned with improving its own status as a secured creditor, not with recovering assets for the benefit of all creditors. Further, the Trustee has not justifiably refused to bring the suit and has not abused his discretion in not suing.'

*Id.* at 909 (quoting *In re McConnell,* 122 B.R. 41, 44 (Bankr.S.D.Tex.1989)).

In this case, however, the United States and the Trustee filed the adversary proceeding seeking substantive consolidation and the Trustee joined the United States' Motion for Summary Judgment. This effectively resolves the issue of standing as the case law clearly states a claim asserting the alter ego theory must be brought by the Trustee. Applying the de novo standard for review of questions of law, the decision of the Bankruptcy Court as to standing is affirmed.

### NOTICE

■ The Bankruptcy Court did not err when it ordered substantive consolidation without affording notice to the non-debtor Appellants' creditors. The Bankruptcy Court decided that there was no material issue of fact that the Debtor and non-debtor Appellants were alter egos and the business dealings of the non-debtor Appellants and Debtor were so inextricably intertwined that no entity that had extended credit to the alter egos of the Debtor could reasonably be said to be without notice. Appellants' assertions that creditors of the non-debtor Appellants relied upon the their independent integrity for payment and not that of New Center Hospital is not supported by the facts in this record. To the contrary, even Urgent Care, appearing amicus curiae in this case, negotiated its emergency care Letter of Intent to Contract dated November 30, 1992 (for services from January 1993–1994), not just with NCC–East, but with New Center Hospital and NCC–East, jointly. (Exhibit # D attached to docket entry 180, A.P. # 93–4687, Trustee's Answers to Defendants' First Set of Interrogatories and Request for Production of Documents.) As to the issue of notice, this Court affirms the decision of the Bankruptcy Court.

### SUBSTANTIVE CONSOLIDATION

### I

■ Appellants claim the Bankruptcy Court, as a matter of law, abused its discretion when it consolidated the non-debtor Appellants with the Debtor. Appellants claim that every court that has reviewed this doctrine since the Supreme Court decisions limiting the Bankruptcy jurisdiction have conceded that the Bankruptcy Court does not have jurisdiction to substantively consolidate non-debtors. Appellants cite *In re Julien Co.,* 120 B.R. 930 (Bankr.W.D.Tenn.1990); *In re R.H.N. Realty Corp.,* 84 B.R. 356 (Bankr. S.D.N.Y.1988); *Matter of Ford,* 54 B.R. 145 (Bankr.W.D.Mo.1984); and *In re Alpha & Omega Realty, Inc.,* 36 B.R. 416 (Bankr.D.Idaho 1984).

*In re Julien* involved a Chapter 11 Trustee who sought to consolidate a corporate debtor's estate with that of the debtor's principal. The Court declined to exercise its powers under 11 U.S.C. § 105(a) to take jurisdiction of the principal's personal assets. The Bankruptcy Court, however, noted that the Judge in *Matter of Munford,* 115 B.R. 390 (Bankr. N.D.Ga.1990) had cited *Sampsell v. Imperial*

*Paper & Color Corp.*, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293, *reh'g denied*, 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552 (1941) and *Soviero v. Franklin Nat'l Bank of Long Island*, 328 F.2d 446 (2nd Cir.1964) as authority for consolidation of the assets of a debtor and non-debtor. *In re Julien*, 120 B.R. at 933–34. The *Munford* Court relied on 11 U.S.C. § 105(a) powers to support its refusal to dismiss a complaint seeking to consolidate a debtor with two non-debtor corporations. *Sampsell* involved an individual debtor who had, with intent, transferred assets to the non-debtor corporation to keep the assets from his creditors. The *In re Julien* Court further noted:

> This Court does not conclude that a bankruptcy court should never order substantive consolidation or that it lacks the equitable authority to do so in an appropriate factual environment.

*Id.* at 936.

In *In re R.H.N. Realty, supra,* the Court found that a Chapter 7 trustee simply does not have standing to bring an alter ego cause of action on behalf of the debtor's creditors. The Court noted however:

> Manifestly, consolidation is authorized when the affairs of the parties are so entwined as to make it impossible to administer them as separate entities.
>
> * * *
>
> In the instant case, the plaintiffs presented no evidence.

*Id.* at 358.

*Matter of Ford, supra,* involved creditors' requests that individual and corporate debtors be consolidated. There the Court found insufficient evidence to warrant consolidation, not that consolidation was not available. In *In re Alpha & Omega, supra,* the Court, although not finding there was jurisdiction to consolidate the non-debtor, wrote:

> [T]he evidence presented by trustee herein is insufficient to support a conclusion that either the partnership or the corporation was a sham or functionally indistinguishable from the other or that either served

as only a conduit for the [partners and shareholders] personally.

*Id.* at 417.

The Bankruptcy Court held that its jurisdiction to order substantive consolidation arose from its equitable powers granted in Section 105(a) of the Bankruptcy Code and cited *Munford* as well as *In re Auto–Train Corp., Inc.*, 810 F.2d 270, 276 (D.C.Cir.1987); *Matter of Walway Co.*, 69 B.R. 967 (Bankr. E.D.Mich.1987); *In re Fairfield Constr. Co.*, Nos. 90–04961–G, 90–0878, 1995 WL 434474 (Bankr.E.D.Mich. September 12, 1991); and *Sampsell v. Imperial Paper & Color Corp., supra.*

This Court, applying the de novo standard for review, finds that the Bankruptcy Court could, under existing law, substantively consolidate the assets of the debtor with the non-debtors. Substantive consolidation of the assets of a corporate debtor and non-debtor corporations is available to the Bankruptcy Court under 11 U.S.C. § 105(a).

**II**

 Although substantive consolidation is available as a remedy, only three circuit courts have ruled on this issue. "It has long been judicially recognized that substantive consolidation must be used sparingly." Comment, *Substantive Consolidation: The Back Door to Involuntary Bankruptcy*, 23 San Diego L.Rev. 203 (1986). The presumption against consolidation arises because of the potentially detrimental effect consolidation may have on innocent creditors of the consolidated entity. *Auto–Train, supra; Matter of Gulfco Inv. Corp.*, 593 F.2d 921 (10th Cir.1979); *In re Flora Mir Candy Corp.*, 432 F.2d 1060 (2nd Cir.1970).

Two tests have been developed to determine if a basis for substantive consolidation exists. A three-part analysis was employed by the D.C.Circuit in *Auto–Train, supra.* The moving party must show a substantial identity between entities to be consolidated. The moving party must show consolidation is necessary to avoid harm or to achieve some benefit. If a creditor objects and demonstrates reliance on the separate credit of an entity and shows that it will be prejudiced by consolidation, the Court must determine that

the benefits of consolidation heavily outweigh the harm.

The first part of this analysis mirrors that used by courts to determine whether corporations are alter egos of one another. The second and third parts of the analysis require balancing the benefits and harms of substantive consolidation.

The second test, employed by the Second Circuit in *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515 (2nd Cir.1988), allows the Court to substantively consolidate a non-debtor with the bankruptcy estate if either of the following criteria is met:

> (i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit' (citations omitted); or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors.

*Id.* at 518.

### III

A determination of whether the corporations in question are alter egos of one another is critical to both analyses. The Sixth Circuit, in *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109 (6th Cir.1989), stated the general principles of corporate law and alter ego analysis under Michigan law:

> '[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice.' (citations omitted) '[F]raud or other attempts to evade the law justify invoking equity's power to look through and behind the legal entity of corporate existence.' (citations omitted) 'The entire spectrum of relevant facts form the background for such an inquiry and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused.' (citation omitted) Each case must be decided on its own facts. (citation omitted).

*Id.* at 111. The *Bodenhamer* Court further stated that the corporate veil could be pierced when: "(a) a corporation and shareholders have complete identity of interest; (b) the corporation is a mere instrumentality of the shareholders; (c) the corporation is a device to avoid legal obligation; or (d) the corporation is used to defeat public convenience, justify a wrong, protect a fraud or defend a crime." *Id.* at 112.

The Bankruptcy Court below also relied on *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir.1986) where, in a federal labor case, the Court found intent was not essential to an alter ego status and noted that the "essential inquiry" is "whether there was a *bona fide* discontinuance and true change of ownership ... or merely a disguised continuance of the old employer." *Id.* at 581.

The Bankruptcy Court did not err in its application of the law as stated. The Bankruptcy Court, having reviewed the facts, found: "that the defendants were at times mere instrumentalities of one another" and that there was "sufficient indicia of unity between the corporations" to support a finding that the corporations were alter egos of one another applying either Michigan or federal law. *Bankr.Op. at p. 11.*

Applying the tests for piercing the corporate veil, the Bankruptcy Court found: that the assets, revenues and operations of the entities have been commingled at various times; that Central City Health Services was an instrumentality of New Center Hospital and was used as a conduit to transfer revenue from New Center Hospital to the other Defendants; that Central City Health Services was used by New Center Hospital to shield funds from creditors of New Center Hospital and to avoid levies and garnishments; that Defendants NCC–East and NCC–Central used fictitious names on bank accounts to avoid the claims of their creditors; and that the corporate structure was used by the New Center Hospital management to defraud the "entire enterprise's" legal creditors. *Bankr.Op. at p. 12.* The Bankruptcy Court also found that many of the incidences of disregard for the corporate veil were isolated and alone were not sufficient for a finding that the Defendants were alter egos of the Debtor. However, the Bankruptcy Court opined that viewed in their totality, these incidences were sufficient

to establish Defendants as alter egos. *Bankr.Op. at p. 12.*

## IV

Following its determination that the facts supported non-debtor Appellants and Debtor as alter egos, the Bankruptcy Court applied the seven-part inquiry of *Augie/Restivo* to determine whether the affairs of the non-debtor Appellants and the Debtor were sufficiently entangled to warrant substantive consolidation. The seven-part inquiry into the inter-relationship of the entities is as follows:

(1) presence or absence of consolidated business or financial records;

(2) unity of interest and ownership between the debtors;

(3) the existence of parent and inter-corporate guarantees on loans;

(4) degree of difficulty in segregating and ascertaining separate assets and liabilities;

(5) existence of transfers of assets without observance of corporate or other legal formalities;

(6) commingling of assets and business functions; and

(7) the profitability of consolidation at a single principal location.

*Augie/Restivo,* 860 F.2d at 518. The Bankruptcy Court concluded that elements two (2) through seven (7) had been established. The Bankruptcy Court noted:

[E]ven when the financial relationships among the parties to be consolidated are capable of being untangled, the affairs of the parties may nonetheless be 'inextricably intertwined.' If intercompany debts and transfers are numerous and the operations are interdependent, the parties are 'entangled' even if a detailed analysis of the records could ultimately identify the true assets and liabilities of the separate entities.

*Bankr.Op. at p. 13* (citing *In re Standard Brands Paint Co.,* 154 B.R. 563, 572 (Bankr. C.D.Cal.1993)).

The Bankruptcy Court, utilizing the Augio/Restivo test, concluded sufficient evidence of unity and entanglement were presented to make the affairs of the Debtor and non-debtor Appellants so inextricably intertwined that untangling the affairs would be either impossible or too costly to the estate. On that basis, the Bankruptcy Court ordered substantive consolidation.

Under an *Auto–Train* analysis, the facts also support a finding of substantial identity—the alter ego issue. In determining that the order should issue *nunc pro tunc,* the Bankruptcy Court observed that the largest creditor of each of the Appellants is the United States or one of the *other* Appellants. This observation seems to satisfy the second prong of the *Auto–Train* analysis, that consolidation is necessary to realize some benefit. Lastly, is whether any creditor has dealt with the Appellants as separate entities and relied on their separate credit so as to be prejudiced by consolidation. No such showing has been made on this record. Even Urgent Care is hard pressed to demonstrate that it relied on the separate credit of any Appellant. Even if Urgent Care had relied on any one of the Appellants separately, it has not been shown it would be prejudiced by consolidation because there has been no adequate showing that any Appellant is separately able to fulfill its legal obligations to creditors. Since reliance and prejudice have not been shown, the Court need not reach the issue of whether the benefits of consolidation "heavily" outweigh the harm.

## V

The Bankruptcy Court ordered substantive consolidation by granting a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 which is incorporated into bankruptcy practice by Fed.R.Bankr.P. 7056. Absent a genuine issue of material fact, summary judgment is the proper means of adjudicating a case.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of

summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

This Court finds that the Bankruptcy Court correctly applied the standard for a Motion for Summary Judgment under Fed. R.Civ.P. 56. In determining whether there existed any material issues of fact, the Bankruptcy Court relied on the pleadings, affidavits, depositions and exhibits properly before the Court. The Bankruptcy Court was entitled to draw reasonable inferences from the evidence before the court.

This Court finds that the facts set forth at pages two (2) through five (5) of the decision of the Bankruptcy Court are not genuinely disputed issues of fact. Based on those facts, the Bankruptcy Court could reasonably find support for substantive consolidation. While this Court may not have drawn the same inferences, the Bankruptcy Courts' inferences are not clearly erroneous. Given the affidavits, depositions and exhibits relied upon by the Trustee and the United States, the Bankruptcy Court had sufficient factual support before it to conclude that the only reasonable inference from the overlap of members of the various boards, the overlap of the minutes and the overlap of roles of the officers, directors and managers of the Debtor and non-debtor Appellants was that the same set of persons controlled and directed all of the enterprises. Given the ability of the financial arm of the entities to engage in money transfers, loans and the like, without formal procedures between the corporations, the Bankruptcy Court had sufficient factual support before it to also conclude that the financial affairs, even if currently separately documented, were so entangled that the Appellants would be hard pressed to show that creditors thought of the Debtor and non-debtor Appellants as separate entities for the purpose of their business dealings. Even Urgent Care, appearing amicus curiae, had dealt with the Debtor and Defendant NCC–East together on at least one occasion. It was not clearly erroneous for the Bankruptcy Court to consider the post petition behavior of the Debtor and non-debtor Appellants and to note that the Debtor continued to pay directly some costs of the Defendant, NCC–East, even after the bankruptcy filing.

Appellants rely heavily on the affidavits of Mr. Albert W. Stanek, Jr. and Mr. Wendell Byrd to establish a question of fact. The Bankruptcy Court apparently found little merit in these affidavits. Mr. Stanek is a Certified Public Accountant who was involved in closing the books of NCC–East in 1992 and 1993. His affidavit attests to financial information during 1992 and January through August of 1993. While useful for that period of time, his statements do not speak to any periods prior to 1992. His affidavit indicates nothing regarding the inter-relatedness of the Debtor and non-debtor Appellants prior to 1992.

The affidavit of Mr. Byrd does not indicate the date of his employment by either NCC–Central or NCC–East. Nor does it indicate the dates of the books, records or documents that were available for him to review. Mr. Byrd's bare denials without explanation or

other reference to this record or specific documents, which form the basis for his knowledge, may properly be disregarded and do not adequately create a material question of fact. *See, e.g., Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309 (6th Cir.1989) (finding that proffered affidavits were insufficient to create a genuine issue of material fact where the affiants "lacked the requisite personal knowledge or experience to testify as to the appellant's work proficiencies."). The Bankruptcy Court was not clearly erroneous in its apparent disregard of these affidavits.

Appellants also rely on the affidavits of Mr. Thomas Barrow and Mr. Harold Murdock.[5] These affidavits were submitted in response to the affidavit of Mr. Alfred Moore. The Bankruptcy Court appears to have adopted much of Mr. Moore's affidavit in formulating its facts. Mr. Moore's affidavit is supported by other evidence in the record and by his personal knowledge and involvement in the day to day operation and financial affairs of the non-debtor Appellants and Debtor. Some portions of Mr. Murdock's affidavit are not based on his personal knowledge. Statements in both affidavits can be read to contradict admissions made by Appellants in their response to the Motion for Summary Judgment. No explanation is given for these contradictions.

Supporting and opposing affidavits submitted pursuant to Rule 56(c) must be "made on personal knowledge." There must be an affirmative showing of personal knowledge of the specific facts. Otherwise the affidavit is not sufficient. *Antonio v. Barnes,* 464 F.2d 584, 585 (4th Cir.1972). Unsupported assertions and conclusory statements must be disregarded by the Court. *In re Kaltz,* 100 B.R. 871, 872 (Bankr.E.D.Mich.1989); *Bsharah v. Eltra Corp.,* 394 F.2d 502, 503 (6th Cir.1968). The affidavit of Mr. Barrow can also be read to contradict his deposition testimony. No explanation was given for the contradiction. In *Dotson v. U.S. Postal Service,* 794 F.Supp.

654 (E.D.Mich.1991), *aff'd,* 977 F.2d 976 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 263, 121 L.Ed.2d 193 (1992), the Court addressed such affidavits:

> While an inconsistent affidavit may preclude summary judgment if the affiant was confused during the deposition, the affidavit must clearly explain why the deponent was confused. (citations omitted)

*Id.* at 659.

The Appellants claim these affidavits raise questions of fact precluding summary judgment. The Bankruptcy Court was not clearly erroneous in disregarding these affidavits. The Bankruptcy Court could reasonably have concluded that no *genuine* issue of *material* fact was raised by these affidavits.

This Court finds that the Bankruptcy Court did not err in determining that there was no genuine issue of material fact remaining in this adversary proceeding. That Court's review of the pleadings, depositions, affidavits and exhibits is not clearly erroneous. Having so found, the Bankruptcy Court decided as a matter of law to grant Appellees' Motion for Summary Judgment. This Court finds no reason to exercise its discretion to reverse the Bankruptcy Court's decision using a de novo standard. The decision of the Bankruptcy Court granting substantive consolidation is affirmed.

### NUNC PRO TUNC

The Bankruptcy Court in this case issued its order *nunc pro tunc,* effective the date of the Trustee's appointment. The *Auto–Train* case sets forth the most recognized standard for determining whether an order for substantive consolidation should be retroactive. The Court wrote:

> [A] court should enter a consolidation order nunc pro tunc only when it is satisfied that the use of nunc pro tunc yields benefits greater than the harm it inflicts.

*Auto–Train,* 810 F.2d at 277.

The Sixth Circuit followed a different standard in *In re Baker & Getty Fin. Services,* 974 F.2d 712 (6th Cir.1992). Declining to

---

**5.** Plaintiffs filed a Joint Motion and Brief to Strike the affidavits of Thomas Barrow and Harold Murdock. A notation in the docket entry # 207 indicates the Motion is moot, but does not indicate whether the Motion or the affidavits were withdrawn. The Court therefore addresses the affidavits.

adopt the analysis of *Auto–Train*, the Sixth Circuit used the analysis of the Court in *Matter of Evans Temple Church of God In Christ and Community Ctr., Inc.*, 55 B.R. 976 (Bankr.N.D.Ohio 1986) which noted:

> [I]t logically follows that where two cases are substantially consolidated ... the preference provisions require us to treat the creditors of both debtors in substantially the same manner. In order for us to do so, we must assign a like filing date to both Debtors for purposes of the preference provisions.

*Id.* at 981–82. The Sixth Circuit did not concede that a different result would be reached by applying the *Auto–Train* approach. The Court noted:

> As *Auto–Train* itself noted, the inquiry it proposed will 'closely parallel' the inquiry already conducted in ordering consolidation. It would add needless confusion to allow relitigation of this question in the guise of litigation over the filing date, particularly when the outcomes will almost always be same. The order of consolidation rests on the foundation that the assets of all of the consolidated parties are substantially the same. Therefore, the earliest filing date is the controlling date and all transfers are to be analyzed as of that date.

*Baker & Getty*, 974 F.2d at 721.

■■■ This Court reviews the Bankruptcy Court's decision to enter the order of substantive consolidation *nunc pro tunc* under an abuse of discretion standard of review. Equitable discretionary powers of the Bankruptcy Court are reviewed using an "abuse of discretion" standard. *See, e.g., In re Briscoe Enter., Ltd.*, 994 F.2d 1160 (5th Cir.1993); *see also In re F/S Airlease II, Inc.*, 844 F.2d 99 (3d Cir.1988). " 'While we follow the bankruptcy court's findings of fact unless clearly erroneous, [when reviewing for abuse of discretion], we exercise plenary review with regard to questions of law.' " *In re Federated Dep't Stores, Inc.*, 44 F.3d 1310, 1315 (6th Cir.1995) (citations omitted).

This Court finds that the Bankruptcy Court's decision to enter the order of substantive consolidation *nunc pro tunc* was an abuse of discretion. Although the Bankrupt-

cy Court had determined that there were no material questions of fact on the issue of substantive consolidation and the alter ego theory, under the *Auto–Train* rule, the Court needed to determine that the *nunc pro tunc* order would achieve a benefit or avoid a harm. So finding, the Court would then have been required to find that a potential preference holder had relied on the separate credit of any of New Center Hospital's alter egos. In this case, the notice to creditors relying on the separate credit of the alter egos is so frail as to be a factor in the consideration of issuing the order *nunc pro tunc*. Nor are the goals of the *Evans Temple* rule met where the creditors of all the debtors are not treated substantially the same. The decision of the Bankruptcy Court to issue its order *nunc pro tunc* is reversed.

### Does Appellee's Failure to Make Discovery Warrant Dismissal and Did the Bankruptcy Court Improperly Set Aside Its Original Dismissal?

Appellants have waived their right to appeal in this proceeding the decision of the Bankruptcy Court altering or amending its Order of Dismissal and the alleged discovery abuses of the Appellees. Appellants' Notice of Appeal references only the order of the Bankruptcy Court granting Summary Judgment in favor of the Appellees. Fed.Bankr. P.Form 17; Fed.R.Bankr.P. 8001(a).

### CONCLUSION

Therefore, after consideration of the Appeal Briefs, including the brief submitted amicus curiae, the arguments of counsel and being otherwise fully advised:

IT IS HEREBY ORDERED that the decision of the Bankruptcy Court, to substantively consolidate the non-debtor Appellants into the bankruptcy estate of New Center Hospital, is AFFIRMED;

IT IS FURTHER ORDERED that the decision of the Bankruptcy Court, issuing its order of substantive consolidation *Nunc Pro Tunc*, is REVERSED;

IT IS FURTHER ORDERED that Appellants' request for review of the Bankruptcy Court's decision to Alter or Amend the order of dismissal is DENIED since the Appellants

have waived the right to appeal that issue; and

**IT IS FURTHER ORDERED** that Appellants' Motion for Stay of Bankruptcy proceedings is DENIED as moot.

**IT IS SO ORDERED.**