In re DOCTORS HOSPITAL OF HYDE PARK, INC., Debtor.

Doctors Hospital of Hyde Park, Inc., Plaintiff,

v.

Dr. James H. Desnick, et al., Defendants.

LaSalle Bank National Association, etc., Counterclaim, Cross–Claim and Third Party Plaintiff,

v.

Dr. James H. Desnick, et al., Counterclaim and Cross–Claim Defendants,

and

Nomura Asset Capital Corporation, et al., Third Party Defendants.

Bankruptcy No. 00 B 11520. Adversary No. 02 A 00363.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Feb. 26, 2004.

Wildman, Harrold, Allen & Dixon, Chicago, IL, for Movant or Plaintiff.

Schwartz Cooper Greenberger & Krauss; Adelman, Gettleman, Merens, Berish & Carter; Greenberg Traurig; Winston & Strawn, Chicago, IL, for Respondent or Defendant.

## MEMORANDUM OPINION

CAROL A. DOYLE, Bankruptcy Judge.

This adversary proceeding is before the court on three motions: Doctors Hospital's ("DH") motion to dismiss the counterclaim and cross-claim complaint of defendant LaSalle Bank as Trustee ("LaSalle"), the cross claim defendants' (Desnick and various Desnick-related entities, collectively "Desnick Entities") motion to dismiss LaSalle's cross-claim, and Nomura Asset Capital Corporation ("Nomura") and Asset Securitization Corporation's ("ASC") motion to dismiss or, alternatively, transfer, abstain, or stay the third party complaint of LaSalle. For the reasons stated below, all three motions to dismiss are granted. Because the court concludes that it has no jurisdiction over LaSalle's third party complaint against Nomura and ASC, their motion in the alternative to transfer will be denied.

## I. Factual Background and Issue

Desnick bought DH in 1992 for $2.4 million. Desnick later split off the hospital's operations from the real estate. DH managed the hospital's business operations, while ownership of the real estate was transferred to HPCH. DH rented the hospital property from HPCH for approximately $470,000 per month.

On August 28, 1997, Nomura Asset Capital Corporation loaned $50 million to

HPCH. Nearly all of these proceeds were transferred to Desnick. The loan was secured by the real property, and guaranteed by DH. In October 1997, Nomura transferred the HPCH loan to ASC, which then deposited the HPCH loan into the REMIC Trust of which LaSalle is trustee.

DH filed for bankruptcy in April 2000. In May 2000, DH rejected the executory portions of its lease with HPCH. As a result, HPCH soon defaulted on the Nomura loan. DH has not made any of the missed loan payments. LaSalle filed a claim against DH for over $60 million in March 2001.

DH filed an adversary proceeding against LaSalle in April 2002 alleging fraudulent transfers. It seeks to avoid the guaranty by DH and the return of rental payments made under the HPCH lease. In June 2003, LaSalle filed a counter-claim, cross-claim, and third-party complaint, asserting claims against HPCH, DH, Desnick, Desnick Entities, ASC, and Nomura. Count I alleges breach of the loan contract by HPCH and/or Desnick as HPCH's alter ego. Count II alleges a breach of the loan guaranty by DH and/or Desnick as DH's alter ego. Count III asserts fraud by HPCH and/or Desnick as HPCH's alter ego. Count IV alleges fraud by DH and/or Desnick as DH's alter ego. Count V seeks substantive consolidation of the Desnick Entities and DH. Count VI alleges conspiracy to defraud by the Desnick Entities and DH. In addition, LaSalle filed a third-party complaint against Nomura and ASC, asserting negligence in making certain warranties and seeking a declaratory judgment that Nomura and ASC are liable to LaSalle in the amount of any recovery by DH against LaSalle in this proceeding.

DH, the Desnick Entities and Nomura/ASC have filed separate motions to dismiss LaSalle's counter-claims, cross-claims, and third-party complaint. For reasons set forth below, all three motions to dismiss will be granted.

## II. Standard on Motion to Dismiss

When considering the debtor's motion to dismiss, the court "must accept as true all the factual allegations" made by the defendants, *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and must construe the pleadings in the light most favorable to the defendants. *See Pickrel v. City of Springfield,* 45 F.3d 1115, 1118 (7th Cir.1995); *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 420 (7th Cir. 1994). The motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the [defendants'] allegations." *Appley v. West,* 832 F.2d 1021, 1030 (7th Cir.1987) (citing *Morgan v. Bank of Waukegan,* 804 F.2d 970, 973 (7th Cir. 1986)).

## III. Counts I and III: Jurisdiction over Claims for Breach of the Loan Contract and Fraud by HPCH and/or Desnick as HPCH's Alter Ego

Count I of LaSalle's cross-complaint alleges a breach of the loan contract by HPCH and/or Desnick as HPCH's alter ego. Count III alleges fraud by HPCH and/or Desnick as HPCH's alter ego. Desnick and DH argue that these counts should be dismissed for several reasons, including that the court does not have jurisdiction over them. Because the court agrees that it does not have jurisdiction, it will not address the other substantive arguments regarding these counts.

DH argues that the court does not have jurisdiction over Counts I and III because

the claims against HPCH and Desnick are not within the court's core jurisdiction, and they are not "related to" the DH bankruptcy case because their resolution will have no appreciable impact on the bankruptcy estate. LaSalle responds that the claims against HPCH and Desnick are within the court's core jurisdiction or its "related to" jurisdiction. In the alternative, LaSalle argues that the court should assert supplemental jurisdiction over these claims.

### A. Core Jurisdiction

■ A bankruptcy court has jurisdiction only over "civil proceedings arising under title 11, or arising in or related to cases under title 11," to the extent those cases are referred to it by the district court. 28 U.S.C. § 1334(b), § 157(a). A case "arises under" Title 11 and is within the core jurisdiction of the court when the cause of action is based on a right or remedy expressly provided in the Bankruptcy Code. *In re Kewanee Boiler Corp.*, 270 B.R. 912, 917 (Bankr.N.D.Ill.2002). LaSalle asserts that these claims "arise under" Title 11 because, if LaSalle recovers from either HPCH or Desnick, the amount of its claim against DH under DH's guaranty of the loan to HPCH will be reduced, thereby increasing the amount of estate assets available to other creditors. LaSalle cites no authority for this proposition. The claims in Counts I and III for breach of contract and fraud arise under state common law, not the Bankruptcy Code. They are not within the core jurisdiction of the court.

### B. "Related to" Jurisdiction

■ Next, LaSalle argues that Counts I and III fall within the "related to" jurisdiction of the court. "Related to" jurisdiction exists over matters when they affect the amount of property for distribution from the estate or the allocation of property among creditors.' " *In re Fed-Pak Systems*, 80 F.3d 207, 213–14 (7th Cir.1996) (quoting *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1992)); *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). The Seventh Circuit Court of Appeals takes a narrow view of "related to" jurisdiction. As the court noted in *In re Xonics*, "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets. It extends no farther than its purpose. That two creditors have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved." 813 F.2d at 131.

■ LaSalle makes the same argument regarding "related to" jurisdiction that it made regarding core jurisdiction. It asserts that, if it recovers from HPCH or Desnick on Counts I or III, the amount recovered will be deducted from the amount of LaSalle's claim against DH for DH's breach of the loan guaranty, leaving more estate assets for other creditors. LaSalle cites no case in its response brief supporting this argument. Under LaSalle's view of "related to" jurisdiction, any time a creditor who filed a claim against the debtor could potentially recover some portion of the amount claimed from a third party, the bankruptcy court would have "related to" jurisdiction over the creditor's claim against the third party. For example, if a creditor had a claim against a debtor, but insurance might also cover some of the creditor's losses, the creditor could sue the insurer in bankruptcy court. The Seventh Circuit's narrow view of "related to" jurisdiction does not stretch this far. The mere possibility that a creditor might recover from a non-debtor and thereby reduce the amount of the creditor's claim against the debtor is not sufficient to bring that claim within the "related to" jurisdiction of the court. *See, e.g., Spaulding & Co. v. Buchanan (In re*

*Spaulding & Co.)*, 131 B.R. 84, 88 (N.D.Ill. 1990) (no "related to" jurisdiction even though third party defendant might have potential claim for indemnification against debtor when no proof of claim filed by creditor seeking indemnification). The court therefore concludes that it does not have "related to" jurisdiction over La-Salle's cross-claims against the non-debtor parties in Counts I and III.

### C. Supplemental Jurisdiction

■ LaSalle next argues that the court can assert supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a). LaSalle acknowledges that courts are divided on the question of whether a bankruptcy court may assert supplemental jurisdiction under § 1367. This court has recently addressed this issue in *Banc of America Inv. Serv. v. Fraiberg (In re Conseco)*, 305 B.R. 281 (Bankr.N.D.Ill.2004) (available at www.ilnb.circ7.dcn/ Doyle/DoyleOpinions.htm). The court concluded that a bankruptcy court cannot assert supplemental jurisdiction. Instead, it is limited to the three types of jurisdiction specifically granted in 28 U.S.C. § 157(a). *See also Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995) (suggesting but not holding that bankruptcy courts cannot exercise supplemental jurisdiction); *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995); *Simmons v. Ford Motor Credit Co., (In re Simmons)*, 224 B.R. 879, 886 (Bankr.N.D.Ill.1998); *In re Fisher*, 151 B.R. 895, 899 (Bankr.N.D.Ill.1993); *In re Alpha Steel Co., Inc.*, 142 B.R. 465, 471 (M.D.Ala.1992). Because the court has no jurisdiction over Counts I and III of La-Salle's cross-claim, these counts will be dismissed.

### IV. Counts II and IV—LaSalle's Standing to Assert Alter Ego Claims

In Count II of its counter-claim and cross-claim, LaSalle alleges that DH breached its guaranty contract with La-Salle and that Desnick is also liable for this breach as the alter ego of DH. Count IV alleges that DH committed fraud against LaSalle and that Desnick is also liable for this fraud as the alter ego of DH. DH and Desnick argue that LaSalle does not have standing to assert the alter ego claims in Counts II and IV.

The Seventh Circuit addressed the issue of standing to assert alter ego claims in *Koch Refining v. Farmers Union Cent. Exchange*, 831 F.2d 1339 (7th Cir.1987). In *Koch Refining*, the court concluded that the trustee in bankruptcy alone has standing to assert alter ego theories for two reasons. First, it held that, under Illinois law, a corporation could sue its own shareholders to pierce the corporate veil. Therefore, a debtor corporation's action against its own shareholders is property of the estate under § 541 of the Bankruptcy Code, 11 U.S.C. § 541. Second, the *Koch Refining* court held that a trustee has standing to sue under alter ego theories on behalf of creditors under § 544 of the Bankruptcy Code, 11 U.S.C. § 544. DH and Desnick acknowledge that after *Koch Refining* was decided, the Illinois Supreme Court held that a corporation may not sue its parent under an alter ego theory. *In re Rehabilitation of Centaur Ins. Co.*, 158 Ill.2d 166, 198 Ill.Dec. 404, 632 N.E.2d 1015 (1994). Because the Seventh Circuit was interpreting Illinois law in concluding that a corporation can sue its own shareholders, the first rationale for the *Koch Refining* decision, that alter ego claims are property of the estate under § 541, is no longer valid.

■ However, the *Koch Refining* court's second rationale remains valid. The court held that a trustee of a debtor corporation has standing to sue sharehold-

ers as alter egos of the corporation because the corporation's creditors could bring such claims. Under § 544(a)(2) of the Bankruptcy Code, the trustee stands in the shoes of a creditor who holds a judgment that has been returned unsatisfied. The trustee has "the rights and powers" of such a creditor, whether or not such a creditor actually exists. 11 U.S.C. § 544(a)(2). As the *Centaur* court recognized, the creditors of a corporation may sue the parent (or shareholders) as alter egos of the corporation. Thus, the second basis for the *Koch Refining* conclusion that only the trustee has standing to bring alter ego claims is still valid. In this case, DH as the debtor-in-possession functions as the trustee for purposes of § 544, 11 U.S.C. § 1107(a), so it alone has standing to sue the shareholders of DH as alter egos of the corporation. Therefore, LaSalle does not have standing to pursue the alter ego portions of its claims in Counts II and IV against Desnick. The cross-claims against Desnick in Counts II and IV must be dismissed. The counter-claims against DH for breach of contract and fraud remain.

## V. Count IV—Trust's Fraud Claims Against DH

### 1. Standing of the Trust to Assert Fraud Claim

■■■■ In Count IV, LaSalle asserts fraud claims against DH, alleging that Desnick "devised a scheme to use the hospital facility as a lever to induce lenders to loan him and his entities millions of dollars for him to use for his personal benefit." LaSalle Response at 2. DH asserts that the fraud claims must be dismissed for several reasons, including LaSalle's lack of standing to pursue these claims. LaSalle's standing to sue for fraud depends on whether the potential fraud claim was properly assigned by Nomura to LaSalle.

Common law claims are assignable in Illinois. *Kleinwort Benson N.A., Inc. v. Quantum Fin. Servs., Inc.*, 181 Ill.2d 214, 229 Ill.Dec. 496, 692 N.E.2d 269 (1998). Whether the potential claim was actually assigned is a question of fact that the court will not decide on a motion to dismiss. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995).

### 2. Fraud Claims Asserted After Claims Bar Date

DH asserts that LaSalle is barred from asserting its fraud counter-claim in Count IV because it failed to file a timely proof of claim against the debtor alleging fraud. LaSalle filed a proof of claim on the March 28, 2001 claims bar date, seeking approximately $60 million for DH's alleged breach of its guaranty of the loan to HPCH. DH argues that this proof of claim did not allege fraud, and that LaSalle's assertion of a fraud claim over two years after the bar date is an entirely new claim that is not timely. LaSalle asserts that its fraud claim is merely another theory of recovery on the proof of claim it filed, and that DH is not prejudiced because it agreed that LaSalle could file counter-claims in this adversary proceeding until June 25, 2003.

■■■■ As a preliminary matter, the court finds that DH's agreement to a scheduling order providing for the filing of counter-claims by June 25, 2003 was not a waiver of DH's right to assert that any such counter-claims were barred because no timely proof of claim regarding the subject matter of the counter-claim had been filed.

■■■■ The more difficult issue is whether LaSalle's failure to specifically allege fraud in its proof of claim bars it from asserting fraud in its counter-claim. Both parties cite cases discussing the standard for whether an amended proof of claim relates back to the original filing. Courts

generally apply the standard in Bankruptcy Rule 7015 for relation back of amendments. Under this test, the amendment relates back if the claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). *E.g., In re AM Int'l, Inc.,* 67 B.R. 79, 81–82 (N.D.Ill.1986). Amendment is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recover on the facts set forth in the original claim. *U.S. v. Int'l Horizons, Inc. (In re Int'l Horizons),* 751 F.2d 1213 (11th Cir.1985). Amendments to proofs of claim filed after the bar date are scrutinized closely to ensure that the amendment is genuine rather than an assertion of an entirely new claim. *Id.* Most courts also apply an alternative test, in which the court balances the equities to determine whether an amendment to a proof of claim filed after the bar date should be allowed. *E.g., In re McLean Industries, Inc.,* 121 B.R. 704, 708 (Bankr. S.D.N.Y.1990); *Integrated Resources, Inc. v. Ameritrust Co. Nat'l Ass'n, et al. (In re Integrated Resources, Inc.),* 157 B.R. 66, 69–71 (S.D.N.Y.1993); *In re Marineland Ocean Resorts, Inc.,* 242 B.R. 748, 755–56 (Bankr.M.D.Fla.1999).

This case is different from most of the cases cited by the parties because LaSalle has not filed an amended proof of claim or expressly requested that its counter-claim be treated as an amendment to its proof of claim. Thus, the tests discussed above do not directly apply here. In addition, most of the cases cited by DH involve simple objections to claims, not whether a creditor can file a counter-claim when the debtor sues it. LaSalle argues that it should be permitted to raise its fraud claim because it is simply pleading a new theory of recovery from the same amount claimed in the proof of claim, and that it may raise this issue defensively when the debtor sues it whether or not it has a proof of claim for fraud. LaSalle relies on *Integrated Resources,* 157 B.R. at 72, to argue that when the debtor sues a creditor, the creditor can raise counter-claims that arise out of the same transaction, even if they are not expressly alleged in a proof of claim.

*Integrated Resources* involved a fact pattern similar to this case. The debtor guaranteed loans to the creditor. After filing for bankruptcy, the debtor sued the creditor to avoid the guarantees as fraudulent transfers. The creditor filed a timely proof of claim for breach of the guaranty, but did not allege fraud in the inducement. The creditor filed a counter-claim to the debtor's complaint and an amendment to its proof of claim that alleged fraud in the inducement of the loan. The district court affirmed the bankruptcy court's denial of a motion to dismiss the counter-claim. It applied the two-part test discussed above, finding that the fraud in inducement claim arose from the same transaction as the guarantee claim and was for the same amount, but simply raised a new legal theory. It also found no substantial prejudice to the debtor because the amended claim did not increase the amount or priority of the creditor's claim. It further found that the prejudice to the creditor would be severe because it would be forced to waive a compulsory counter-claim. The court also held that the counter-claims might be allowed as recoupment against the debtor's fraudulent transfer claim.

As noted earlier, in this case, LaSalle has not filed an amended claim or even requested that its counter-claim be deemed an amended claim. However, even without such an amendment, LaSalle's claims may be permissible under recoupment or set-off theories. *Integrated Resources,* 157 B.R. at 73 (recoupment

permitted in fraudulent transfer actions); *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.),* 96 F.3d 687, 691 (3rd Cir.1996) (court rejected untimely proof of claim and would not consider compulsory counter-claim an informal proof of claim, but held creditor may have right to set-off). *Cf. In re Bare,* 284 B.R. 870, 873 (Bankr.N.D.Ill.2002) (discussing cases on both sides of issue of whether set-off rights survive a discharge). Thus, in some circumstances, courts have allowed a creditor to assert a counter-claim in the nature of set-off or recoupment even though the creditor did not file a proof of claim. It is unclear at this stage of the proceedings whether LaSalle can assert its fraud claim under a theory of recoupment or set-off regardless of the claim asserted in its proof of claim. Therefore, the court will not dismiss LaSalle's fraud claim on the basis that its proof of claim did not specifically allege fraud.

### 3. Statute of Limitations—Fraud Claim

DH also argues that LaSalle's fraud claim is barred by the statute of limitations. Fraud claims must be brought within five years of the time the fraud is discovered or could have been discovered by exercise of reasonable diligence. *Bashton v. Ritko,* 164 Ill.App.3d 37, 115 Ill.Dec. 296, 517 N.E.2d 707, 710 (1987); *Clark v. Robert W. Baird Co.,* 142 F.Supp.2d 1065, 1074–75 (N.D.Ill.2001). Under the "discovery rule," "the statute of limitations starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused; this is usually a question of fact." *Bashton v. Ritko,* 115 Ill.Dec. 296, 517 N.E.2d at 710.

DH acknowledges that the discovery rule may apply. It argues, however, that LaSalle's own allegations against Nomura establish that Nomura knew or should have known about the alleged fraud at the time that Nomura transferred the loan to LaSalle in October 1997. LaSalle stands in the shoes of Nomura in asserting the fraud claim, so the statute of limitations on LaSalle's fraud claim began to run when Nomura knew or should have known about it. *E.g., Block v. Pepper Construction Co.,* 304 Ill.App.3d 809, 816, 237 Ill. Dec. 662, 710 N.E.2d 85, 90 (1999); *Curtis v. Womeldorff,* 145 Ill.App.3d 1006, 1007–08, 99 Ill.Dec. 807, 496 N.E.2d 500, 501 (1986). In LaSalle's third party complaint against Nomura, LaSalle alleges that, if Nomura had followed prudent underwriting standards and practices, it would have known that HPCH would not have the ability to repay the loan. DH asserts that these allegations establish that Nomura should have discovered the fraud and its injury when it transferred the loan to La-Salle in October 1997. LaSalle filed its fraud counter-claim in June 2003, more than five years after Nomura transferred the loan to LaSalle.

LaSalle responds that DH is attempting to raise Nomura's negligence as a defense to fraud and that contributory negligence is not a defense to fraud. This argument misses the point. If Nomura should have discovered the fraud in 1997, then LaSalle is barred by the statute of limitations from asserting fraud against DH, whether contributory negligence is a defense to fraud or not. However, the court is not willing to make a conclusive factual finding against LaSalle on a motion to dismiss based only on LaSalle's own allegations against Nomura. When the alleged fraud should have been discovered is a factual question that cannot be resolved on a motion to dismiss.

#### 4. Fraud Not Plead with Particularity

 LaSalle's fraud claims will nonetheless be dismissed because they are not pled with sufficient particularity. Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." A fraud pleading must include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.1997) (citations omitted).

 LaSalle contends that its fraud count is sufficiently detailed, and points to paragraphs 26, 35, 65–68, 71–73, and 98–99 of its counter-claim and cross-claim. None of these paragraphs contains any particularized allegation of fraud. Paragraphs 26, 35, 65–68 and 71–73 simply give a brief description of the loan transaction. Paragraph 73 alleges that LaSalle has been damaged by DH's failure to perform under the guaranty agreement. Paragraphs 98 alleges that DH and/or Desnick represented to Nomura that "Doctors Hospital had sufficient business revenues and operations to guaranty the HPCH Loan by Nomura to HPCH. This representation was false. This was a misrepresentation of material fact." Paragraph 99 alleges that DH knew or should have known that "the business, revenues, and operations of Doctors Hospital were overstated by use of erroneous and inflated billing codes, practices and procedures for Medicare and Medicaid reimbursements and that the actual business revenues and operations were not sufficient to support the Guaranty of Doctors Hospital."

 Neither these allegations nor any other allegations in the complaint provide the "who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). LaSalle argues that which defendant made which statements is "plain from the Complaint read as a whole" and that the persons to whom these misrepresentations were made is "self evident and plain." Reply to DH, p. 31–32. The court disagrees. Fraud is a serious charge, easy to allege and hard to prove. The rules therefore require pleading with particularity. It must be clear from the beginning that the plaintiff has specific details of what happened, when, where, and to whom. No such details are alleged. Count IV will therefore be dismissed.

### VI. Count V: Claim for Substantive Consolidation of Desnick Entities and DH

In Count V of its Complaint, LaSalle seeks substantive consolidation of DH and all of the counter-claim defendants (the Desnick Entities). DH and the Desnick Entities argue that LaSalle lacks standing to seek substantive consolidation. The court agrees. Even assuming that a creditor could ever have standing to assert such a claim, LaSalle has not pled facts that would support such standing.

 Substantive consolidation has no express statutory basis, but rather is a "product of judicial gloss." *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2nd Cir.1988). Substantive consolidation results in "pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *Id.* It has long been recognized that this doctrine must be used sparingly. *In re New Center Hospital,*

187 B.R. 560, 567 (E.D.Mich.1995). "The presumption against consolidation arises because of the potentially detrimental effect consolidation may have on innocent creditors of the consolidated entity." *Id.* Substantive consolidation merges two legally distinct entities into a "single debtor with a common pool of assets and a common body of liabilities." Mary Elizabeth Kors, *Altered Egos: Deciphering Substantive Consolidation,* 59 U. Pitt. L.Rev. 381, 383 (1998).

Courts allowing substantive consolidation with non-debtors have generally done so at the request of a trustee or debtor-in-possession, not a creditor. Some courts have allowed creditors to bring substantive consolidation actions. *E.g., Bracaglia v. Manzo (In re United Stairs Corp.),* 176 B.R. 359, 367 (Bankr.D.N.J.1995). These courts have required agreement or joinder by the trustee or debtor-in-possession, or a showing that (1) a creditor's committee asked the debtor-in-possession to pursue the claim and the request was refused, and (2) the debtor-in-possession abused its discretion in so refusing. *Id.; In re New Center Hospital,* 187 B.R. at 566 (granting motion for substantive consolidation that was brought jointly by the IRS and the trustee). However, the court need not decide whether a creditor could ever have standing to bring an action for substantive consolidation, because LaSalle has not made allegations sufficient to establish its standing under the few cases recognizing creditor standing. LaSalle does not allege that DH has agreed that LaSalle can bring this action, or that it has requested DH to bring such an action and DH has wrongfully refused. Therefore, LaSalle has not made sufficient allegations to support its standing to bring a claim for substantive consolidation. Count V will therefore be dismissed.

## VII. Count VI: Claim for Conspiracy to Defraud

■■■■■■■ LaSalle next alleges conspiracy to defraud by DH and the Desnick Entities. DH argues that this count should be dismissed because it is not possible for DH to conspire with Desnick, its sole shareholder, and because the underlying fraud has not been pled with particularity. As previously discussed, LaSalle has failed to plead an adequate fraud claim. "Mere allegations of fraud, corruption or conspiracy ... are too conclusional to satisfy the particularity requirement." *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir.1989). Moreover, "to state a valid conspiracy to defraud claim plaintiffs must allege facts establishing the elements of fraud under Illinois law." *Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 878 F.Supp. 1156, 1162 (N.D.Ill.1995) (J. Holderman). LaSalle's defense of its conspiracy claim is that it is "equally viable" to the fraud claim. Both are inadequate. The conspiracy claim rests on a faulty fraud claim and therefore must also be dismissed.

## VIII. Third Party Complaint Against Nomura and ASC

LaSalle has filed a third-party complaint against Nomura and ASC, seeking indemnity and contribution. It alleges that Nomura committed negligence in funding the loan to HPCH and assigning that loan to LaSalle through ASC. It seeks a declaration that Nomura and ASC are liable to it for any damages for which it is held liable in DH's action against it. DH, Nomura, and ASC assert that the court does not have jurisdiction over these claims. LaSalle responds that the court can assert either "related to" or supplemental jurisdiction over these claims. As explained below, the court concludes that it does not have jurisdiction over these claims.

LaSalle first asserts that its third-party claims against Nomura and ASC are within the "related to" jurisdiction of the court. It argues that the its claim against the estate will be reduced by any amount that it recovers on its third-party complaint. As discussed above with respect to Counts I and III, this is insufficient to support "related to" jurisdiction. The cases LaSalle cites hold only that, even when the plaintiff or defendant in an adversary proceeding has a potential claim for indemnity against the debtor, the court does not have "related to" jurisdiction over the action unless that party has filed a proof of claim seeking indemnification from the debtor. *Spaulding & Co. v. Buchanan (In re Spaulding & Co.)*, 131 B.R. 84, 88 (N.D.Ill.1990) (no jurisdiction when third party defendant had hypothetical but unfiled claim for indemnification against debtor); *Salem Mills, Inc. v. Wisconsin Tool & Stamping Co., (In re Salem Mills, Inc.)*, 148 B.R. 505, 507 (Bankr.N.D.Ill. 1992) (court had jurisdiction over creditor's third party action only because creditor filed a timely indemnification claim against debtor). Here, LaSalle does not assert that it, Nomura or ASC have filed indemnification claims against the debtor, so these cases do not support its argument. The court therefore concludes that it does not have "related to" jurisdiction over LaSalle's claims against Nomura and ASC.

LaSalle next argues that the court can assert supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a). As discussed above, bankruptcy courts may not exercise supplemental jurisdiction. Because the court does not have jurisdiction over LaSalle's claims against Nomura and ASC, DH's motion to dismiss LaSalle's third party claims against them is granted.

## IX. Conclusion

For the reasons set forth above, the motions to dismiss filed by DH, the Desnick Entities, and Nomura and ASC will be granted. The court will dismiss all of LaSalle's counter-claims against DH except its claim for breach of the guaranty agreement in Count II. All of LaSalle's cross-claims against the Desnick Entities will be dismissed. LaSalle's third party complaint against Nomura and ASC will also be dismissed. Because the court does not have jurisdiction over the third party claims against Nomura and ASC, their motion in the alternative to transfer will also be denied.[1]

---

1. The court will dismiss the claims discussed above without referring this matter to the district court for entry of judgment under 28 U.S.C. § 157(c)(1) because all of the issues decided are within the core jurisdiction of the court. First, it is within the core jurisdiction of the court to determine whether it has jurisdiction. Second, with respect to LaSalle's alter-ego claims in Counts II and IV, the court has core jurisdiction because the result of a successful alter-ego action would be to increase the size of the estate. It also has core jurisdiction to decide whether 11 U.S.C. § 544 precludes LaSalle from asserting alter ego claims. Third, with respect to the LaSalle's fraud claim against DH, the court has core jurisdiction over pre-petition claims against the debtor, whether brought via proof of claim or counter-claim. Finally, the issue of substantive consolidation is a bankruptcy issue within the core jurisdiction of this court because it may determine the extent of the bankruptcy estate.