FOURTH DIVISION

May 26, 2005

No. 1-04-0122

ESTATE OF ROBERT P. WILLIS II, Deceased, By and Through ) Appeal from the

Debbie E. McDaniel, as Special Administratrix, ) Circuit Court of

) Cook County.

Plaintiff, )

)

v. )

)

KIFERBAUM CONSTRUCTION CORPORATION, ) 

and ARLINGTON STRUCTURAL STEEL CORPORATION, )

)

Defendants ) No. 99 L 11952

)

(Kiferbaum Construction Corporation, )

)

Third-Party Plaintiff-Appellant, )

v. )

)          Honorable

Decking and Steel, Inc., ) Arnette R. Hubbard

) James P. Flannery,

Third-Party Defendant-Appellee). ) Judges Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Third-party plaintiff Kiferbaum Construction Corp. (Kiferbaum) appeals from an order of the trial court finding a settlement agreement between plaintiff Debbie McDaniel and third-party defendant Decking & Steel, Inc. (Decking & Steel), to be in good faith and dismissing Kiferbaum’s third-party complaint for contribution against Decking & Steel with prejudice.  For the reasons that follow, we affirm.

In 1999, Kiferbaum was designated as the general contractor for the construction of a building in Vernon Hills for Educational Testing Associates.  Kiferbaum entered into a subcontract with Arlington Structural Steel Corp. (Arlington) to fabricate and erect structural steel for the project.  Paragraph 7 of the subcontract stated in part:

"The Subcontractor agrees to assume entire responsibility and liability, to the fullest extent permitted by law, for all damages or injury to all persons, whether employees or otherwise, and to all property, arising out of it, resulting from or in any manner connected with, the execution of the work provided for in this Subcontractor [
sic
] *** and the Subcontractor, to the fullest extent permitted by law, agrees to indemnify and save harmless the Contractor *** from all such claims including, without limiting the generality of the foregoing, claims for which the Contractor may be or may be claimed to be, liable and legal fees and disbursements paid or incurred to enforce the provisions of this paragraph ***.”

The Kiferbaum-Arlington indemnity provision did not require Arlington to indemnify Kiferbaum against its own negligence.  It also stated, under paragraph 11, that where any "provision of the General Contract documents between the Owner and Contractor is inconsistent with any provision of this Agreement, this Subcontract shall govern.” 

Arlington in turn entered into a subcontract with Decking & Steel to erect the structural steel Arlington had fabricated.  The subcontract, written on a 1978 standard form, identified Arlington as the "Contractor” and Decking & Steel as the "Subcontractor” and stated that its documents consisted of "this Agreement” as well as "the Agreement between the General Contractor and Contractor.”  

The general conditions stated that "the Subcontractor” would assume toward "the Contractor” all the obligations and responsibilities which "the Contractor” assumed toward "the Owner” and would have the benefit of all rights against "the Contractor” which "the Contractor” had against "the Owner,” but that where any provision of the contract between the "Owner” and the "Contractor” was inconsistent with a provision of the immediate subcontract, the subcontract between Arlington and Decking & Steel would govern. 

The subcontract contained an indemnification provision in Article 11.11.1, which read, in part, as follows:

"the Subcontractor shall indemnify and hold harmless the Owner, the Architect and the Contractor and all of their agents and employees from and against all claims, damages, losses, and expenses *** arising out of or resulting from the performance of the Subcontractor’s work under this Subcontract, provided that any such claim *** is attributable to bodily injury *** to the extent caused in whole or in part by any negligent act or omission of the Subcontractor of anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by a party indemnified hereunder.”

Paragraph 11.11.2 of the subcontract stated as follows:

"In any and all claims against the Owner, the Architect, or the Contractor or any of their agents or employees by any employee of the Subcontractor, anyone directly or indirectly employed by him or anyone for whose acts he may be liable, the indemnification obligation under this Paragraph 11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers’ or workmen’s compensation acts, disability benefit acts or other employee benefit acts.”

The subcontract also included an insurance rider that required Decking & Steel to name Arlington, "the General Contractor, the Owner, the Architect, the Engineer and the Lender” as insureds on its general liability policies and specifically stated that Kiferbaum was to be named as one of the additional insureds.  The insurance rider did name Kiferbaum as the general contractor.

The deceased, Robert Willis II, an employee of Decking & Steel, fell from the building site and suffered fatal injuries in October 1999.  On behalf of his estate, plaintiff Debbie E. McDaniel filed suit for wrongful death against Kiferbaum and Arlington.  Kiferbaum and Arlington in turn filed third-party complaints against Decking & Steel seeking contribution in the amount of its 
pro rata 
share of fault in the deceased’s death.  Decking & Steel filed a motion contending that its share of liability was limited to its maximum liability under the Workers’ Compensation Act (820 ILCS 305/1 
et seq
. (West 2000)), as held in 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155 (1991). 

Arlington responded that, in its subcontract with Arlington, Decking & Steel had waived the 
Kotecki
 cap when it agreed to the indemnification language in its subcontract with Arlington.  Kiferbaum responded similarly, contending that the language applied to its claim for contribution since it was a third-party beneficiary of the subcontract.  

The trial court denied Decking & Steel’s motion with regard to Arlington’s complaint, finding that Decking & Steel had waived the 
Kotecki
 cap through its subcontract with Arlington, and granted the motion as to Kiferbaum’s complaint, finding that Kiferbaum was not a third-party beneficiary of the contract between Arlington and Decking & Steel.

The case went to trial in 2003, and soon thereafter, Arlington reached a settlement agreement with plaintiff and was dismissed as a defendant.  Decking & Steel also reached a settlement, the terms of which were that Decking & Steel waived its workers’ compensation lien as to the amounts already paid to plaintiff (totaling $137,000), but not as to a $150,000 lump sum to be paid in settlement for plaintiff’s compensation claim for future benefits.  Decking & Steel sought a finding that the settlement was in good faith pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 
et seq. 
(West 2000)) and that, as a result, it was no longer subject to Kiferbaum’s claim for contribution.  Kiferbaum objected, arguing that the court’s previous ruling on the 
Kotecki
 waiver issue was incorrect and that the settlement was therefore not in good faith due to the disparity between the monetary value of Decking & Steel’s settlement offer and its actual liability.  The trial court did not consider whether the waiver issue would affect a good-faith finding and entered an order finding Decking & Steel’s settlement to be in good faith and dismissing Kiferbaum’s complaint for contribution with prejudice.  Plaintiff thereafter voluntarily dismissed the case.  Kiferbaum now appeals. 

Kiferbaum first contends that it was a direct and intended third-party beneficiary of the subcontract between Arlington and Decking & Steel and that Decking & Steel therefore waived the 
Kotecki
 cap with respect to Kiferbaum’s claim for contribution.  It argues that, taken as a whole, the subcontract signifies an intent by Arlington and Decking & Steel to benefit Kiferbaum directly.  Kiferbaum points out that it is expressly named as the general contractor in the subcontract’s insurance rider; that the subcontract incorporates by reference the subcontract between Kiferbaum and Arlington; that the Kiferbaum-Arlington contract also contained a clear 
Kotecki
 waiver; that the subcontract contained a "flow-down” clause providing that Decking & Steel assumed with respect to Arlington all the obligations that Arlington had assumed with respect to Kiferbaum; and that the Arlington-Decking & Steel subcontract contains a clear 
Kotecki
 waiver.  Neither party argues the validity of the last point.

In response, Decking & Steel contends that it did not waive the 
Kotecki
 cap as to Kiferbaum’s claim, pointing out that the indemnification provisions of its subcontract with Arlington did not mention Kiferbaum by name or by description nor did they confer any waiver benefit on Kiferbaum; that the contract between Kiferbaum and Arlington was not incorporated into the subcontract between Arlington and Decking & Steel because the subcontract stated that it would govern any inconsistencies; that the Kiferbaum-Arlington contract did not contain a 
Kotecki
 waiver; that the "flow-down” clause pertained only to the obligation to assume the responsibilities of Arlington to Educational Testing Associates; and that the indemnification provisions of the Arlington-Decking & Steel subcontract did not flow to Kiferbaum.

The Illinois Supreme Court established the concept of limiting a third-party employer defendant’s liability in contribution claims to its statutory liability under the Workers’ Compensation Act in 
Kotecki
.  There the court held that the intent of the Workers’ Compensation Act to establish the compensation it provided as the measure of an employer’s responsibility required that amounts recovered through the Contribution Act be limited to the amount of workers’ compensation paid to the injured employee.  
Kotecki
, 146 Ill. 2d at 163-66.  The supreme court subsequently held that this affirmative defense could be waived where an employer enters into an agreement prior to the commencement of litigation to assume full liability for damages commensurate with its relative degree of fault.  
Braye v. Archer-Daniels-Midland Co.
, 175 Ill. 2d 201, 208 (1997).  In essence, a party who agrees to waive 
Kotecki
 as an affirmative defense voluntarily assumes contribution liability in excess of the limitations provided under the Compensation Act.  
Christy-Foltz, Inc. v. Safety Mutual Casualty Corp.
, 309 Ill. App. 3d 686, 693 (2000).  

In order to have a contractual waiver of the 
Kotecki
 damage cap, a contract must have a valid provision by which the waiver is made.  
Liccardi v. Stolt Terminals, Inc.
, 178 Ill. 2d 540, 546 (1997).  A contract may affect also a party’s liability limitations where its provisions violate the Construction Contract Indemnification for Negligence Act (Indemnification Act).  740 ILCS 35/1 (West 2002).  The Indemnification Act renders void as against public policy any agreement that indemnifies a party for that party’s own negligence.  740 ILCS 35/1 (West 2002).  The purpose of the provision is to protect workers and the public from attempts to avoid liability through the use of indemnity agreements and encourage worksite safety.  
W.E. O’Neil Construction Co. v. General Casualty Co.
, 321 Ill. App. 3d 550, 556 (2001).  Illinois courts construe contractual provisions seeking partial indemnity as provisions seeking contribution.  
Stevens v. Silver Manufacturing Co.
, 70 Ill. 2d 41, 46 (1977); 
Herington v. J.S. Alberici Construction Co.
, 266 Ill. App. 3d 489, 494 (1994).  Where an employer agrees to assume unlimited liability, that employer agrees to waive the 
Kotecki
 limitation as to contribution claims.  
Braye
, 175 Ill. 2d at 208.

Here, under paragraph 11.11.1 of the Arlington-Decking & Steel subcontract, Decking & Steel (as "Subcontractor) agreed to indemnify Arlington (as "Contractor”) against claims of injury "caused in whole or in part by any negligent act or omission of the Subcontractor.”  Furthermore paragraph 11.11.2 states that "the indemnification obligation under this Paragraph 11.11 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under *** workmen’s compensation acts.”  

Reading this language, we agree with the circuit court that Decking & Steel waived the 
Kotecki
 cap as to Arlington’s claim for contribution.  Whether that waiver extends to Kiferbaum’s claim for contribution is another matter.

Kiferbaum contends that its subcontract with Arlington also contains a clear 
Kotecki
 waiver.  We do not agree.  Paragraph 7 states that Arlington agreed to indemnify and assume responsibility for all damages or injury to employees resulting from the execution of its work "to the fullest extent permitted by law.”  The words "shall not be limited,” or other phrases purporting to indemnify either party for its own negligence, did not appear in that provision, as they did in the indemnification provisions of the Arlington-Decking & Steel subcontract.  Therefore, we reject Kiferbaum’s contention that its subcontract with Arlington contained a waiver of the 
Kotecki
 cap.

We also cannot agree with Kiferbaum’s argument that the 
Kotecki
 waiver in the Arlington-Decking & Steel subcontract extended to its own claim for contribution.  Article I of the contract between Arlington and Decking & Steel specifically incorporates the contract between Kiferbaum and Arlington, making it a part of the subcontract by reference.  See 
Bransky v. Schmidt Motor Sales, Inc.
, 222 Ill. App. 3d 1056, 1062 (1991) (where a contract incorporates another document by reference, its terms become part of the contract).  Accordingly, we examine both contracts in determining whether Kiferbaum was an intended third-party beneficiary of the Arlington-Decking & Steel subcontract.

Illinois law holds a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party.  
Bates & Rogers Construction Corp. v. Greely & Hansen
, 109 Ill. 2d 225 (1985).  Illinois recognizes two types of third-party beneficiaries, intended and incidental.  An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them.  
MBD Enterprises, Inc. v. American National Bank of Chicago
, 275 Ill. App. 3d 164 (1995).  "[T]he right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument ***.  The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability.”  
Carson Pirie Scott & Co. v. Parrett
, 346 Ill. 252, 258 (1931).  

A third party has no rights to damages from a breach of a contract entered into by others unless the agreed-to provision was intentionally included for the direct benefit of the third party. It is not necessary that the contract specifically name the third-party beneficiary if it adequately defines a class of individual beneficiaries.  
Altevogt v. Brinkoetter
, 85 Ill. 2d 44 (1981).  

With respect to construction contracts, it is not enough to confer direct third party beneficiary status where the parties to the contract know, expect, or intend that a third party will benefit from the construction of a building in that they will be the users of it.  The contract must be undertaken for the third party’s direct benefit and the contract must affirmatively make such an intention clear.  
155 Harbor Drive Condominium Assn. v. Harbor Point, Inc.
, 209 Ill. App. 3d 631 (1991).  However, if the terms of a promise for which the promisee bargained with the promisor are to render a performance directly to the third party, in nearly every case the third party who is to receive performance will be the party intended to be benefited.  
Village of Fox Lake v. Aetna Casualty & Surety Co.
, 178 Ill. App. 3d 887, 911-12 (1989).  

Liability to a third party must appear affirmatively in the contract language and the circumstances of the parties at the time of execution; it cannot be expanded simply because the circumstances justify or demand further liability.  
Ball Corp. v. Bohlin Building Corp.
, 187 Ill. App. 3d 175, 177 (1989).  Illinois courts require an express provision indicating third-party-beneficiary status because of the strong presumption against construing it, and the presumption can only be overcome by an implication so strong as to be practically an express declaration.  
Ball Corp.
, 187 Ill. App. 3d at 177.

We recognize that in the construction industry, general contractors are likely to assume that they are third-party beneficiaries of the agreements undertaken by their subcontractors.  Illinois courts have held that subcontractors can acquire third-party beneficiary status in contracts between government entities and general contractors pursuant to the Public Construction Bond Act (30 ILCS 550/2 (West 2002)) and where general contractors agree to obtain surety bonds to ensure payment to third-party subcontractors.  See 
Ardon Electric Co., Inc. v. Winterset Construction, Inc.
, 354 Ill. App. 3d 28 (2004); 
Town & Country Bank of Springfield v. James M. Canfield Contracting Co.
, 55 Ill. App. 3d 91 (1978).  Subcontractors may also obtain compensation from public entities in the absence of a direct contract pursuant to the Mechanics Lien Act.  770 ILCS 60/23 (West 2002).  The Illinois Supreme Court has also held that an engineer retained by an owner to oversee a construction project, but who was not a party to the general contract, was an intended third-party beneficiary of the contract where the agreement specifically placed the engineer in charge of the management of the project and contained an exhaustive description of the engineer’s responsibilities.  
Bates & Rogers Construction Corp.
, 109 Ill. 2d at 233-34.  Further, the supreme court has held that an owner may enforce a contract as a third-party beneficiary where the contract requires subcontractors to consult with the owner as to the project’s requirements and describes the method by which the third party may recover.  
People ex rel. Resnick v. Curtis & Davis, Architects & Planners, Inc.
, 78 Ill. 2d 381, 386-87 (1980).  

Conversely, Illinois courts have also held that building owners and subsequent purchasers may not enforce the terms of subcontracts in the absence of specific references to or obligations toward those owners.  See 
155 Harbor Drive Condominium Assn.
, 209 Ill. App. 3d at 648; 
Waterford Condominium Assn. v. Dunbar Corp.,
, 104 Ill. App. 3d 371, 374-75; 
Ball Corp.
, 187 Ill. App. 3d at 178-79.  While we have not uncovered any case law explicitly stating so, we believe that the privity of contract between general contractors and third-party contractors ought to be closer than that between building owners and subcontractors.  However, this court is loathe to rewrite the rules of determining third-party beneficiary status merely on the basis of the identity of the litigants. 

 The Kiferbaum-Arlington contract contains no provisions granting Kiferbaum any rights to enforce subcontracts between Arlington and other subcontractors nor does it contain any provisions directing that any subcontracts undertaken by Arlington contain language designating Kiferbaum as an intended third-party beneficiary.  Moreover, the Arlington-Decking & Steel subcontract contains no direct reference to Kiferbaum or any obligations by Decking & Steel toward Kiferbaum.  Therefore, we find that Kiferbaum has no rights to enforce the terms of the Arlington-Decking & Steel subcontract.

Kiferbaum also argues that the Arlington-Decking & Steel subcontract shows a clear implication of an intent to benefit Kiferbaum mainly because Kiferbaum is named as the general contractor in the insurance rider.  We disagree.  This court regards a promise to obtain insurance as wholly different from a promise to indemnify.  
W.E. O’Neil Construction Co.
, 321 Ill. App. 3d at 557.  Where there is a promise to obtain insurance, the promisor agrees to procure insurance but does not agree to bear responsibility in the event of injury or loss.  A promise in a subcontract to name a third party as an additional insured is not inextricably tied to that party’s promise to indemnify the party with whom it enters into the overarching agreement.  
W.E. O’Neil Construction Co.
, 321 Ill. App. 3d at 557.  In the Arlington-Decking & Steel subcontract, Decking & Steel made no promise to indemnify Kiferbaum, only to name it as an additional insured on its general liability policy.  Accordingly, Kiferbaum’s argument on this point fails.

Furthermore, each subcontract states that, where the related provisions of another contract or subcontract differ, the terms of the immediate agreement govern.  We believe those clauses manifest an intent to establish separate contractual relationships between Kiferbaum and Arlington and between Arlington and Decking & Steel.  See 
Ball Corp.
, 187 Ill. App. 3d at 178.  Moreover, as stated above, the indemnification provisions of each subcontract differ in that the Arlington-Decking & Steel agreement waives the limitation on claims for employee injuries while the Kiferbaum-Arlington agreement indemnifies Kiferbaum only "to the fullest extent permitted by law.”  Accordingly, we conclude that the terms of the Arlington-Decking & Steel indemnification provision, specifically the 
Kotecki
 waiver, apply only to those two parties and not to Kiferbaum.  

 We therefore find that Kiferbaum is not an intended third-party beneficiary of the Arlington-Decking & Steel subcontract and that its claim for contribution from Decking & Steel was limited to the amount allowed under the Workers’ Compensation Act, pursuant to the rule of 
Kotecki
.  

We realize the importance of this decision in that its result can expose general contractors to substantial loss for the lax judgment of subcontractors working under them.  Here, we have an instance where the subcontractors based their own agreement on a form drafted several years before 
Kotecki
 was decided and which conferred on Arlington, but not Kiferbaum, a right to unlimited contribution from Decking & Steel.  While it certainly may not appear equitable to limit Kiferbaum’s right to contribution for its subcontractors’ failure to use a current form contract, we may not reach a different result without drastically rewriting the rules of contract interpretation.

While we realize it may be of little solace to Kiferbaum in this instance, we feel it incumbent upon us to advise general contractors to insert language into future standard contracts requiring that their subcontractors designate the general contractor as an explicit third-party beneficiary of all subcontracts entered into in furtherance of the general contract.  We believe such alterations would protect general contractors by providing them explicit rights of recovery in their appurtenant subcontracts, and would prevent the future recurrence of the result we have just reached.

Having found above that Decking & Steel’s liability for contribution to Kiferbaum was limited by the 
Kotecki
 cap, we need not review of the propriety of the trial court’s finding of a good-faith settlement between Decking & Steel and plaintiff and its subsequent dismissal order.  Therefore, remand is unnecessary.

Affirmed.

REID, P.J., and THEIS, J., concur.