In re MISSION BAY SKI & BIKE, INC., and Lukasz Remiasz, Debtors.

William W. Linnemann and Valerie J. Gervais, Plaintiffs,

v.

Aaron Post, Defendant.

Bankruptcy No. 07 B 20870.
Adversary No. 08 A 282.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 15, 2008.

R. Scott Alsterda, Tina B. Solis, Jamie A. Robinson, Ungaretti & Harris LLP, Chicago, IL, Attorneys for plaintiffs William W. Linnemann and Valerie J. Gervais.

Nancy Lee Carlson, Inverness, IL, Attorneys for defendant Aaron Post.

Bruce Dopke, Schaumburg, IL, Donald F. Engel, Chicago, IL, Attorneys for debtor Mission Bay Ski & Bike, Inc.

Bert Zaczek, Chicago, IL, Attorneys for debtor Lukasz Remiasz.

### MEMORANDUM OPINION

A. BENJAMIN GOLDGAR,
Bankruptcy Judge.

Before the court for ruling is the motion of plaintiffs William Linnemann and Valerie Gervais to remand this action to the Circuit Court for the 22nd Judicial Circuit, McHenry County, Illinois. For the reasons that follow, the motion to remand will be denied.

#### 1. Background

The complaint in the action alleges a simple claim for breach of contract. On February 28, 2007, Mission Bay Ski & Bike entered into a Loan and Security Agreement with First American Bank under which Mission Bay borrowed $1.1 million. Mission Bay also signed a term note for the loan. As a part of the transaction, defendant Aaron Post (along with Lukasz Remiasz, David Remiasz, and Troy Crady) signed a guaranty agreement in which they guaranteed payments under the note.

Mission Bay defaulted on the note and in November 2007 filed bankruptcy under chapter 11. Post is not a debtor in a bankruptcy case.

On January 14, 2008, shortly after the Mission Bay and Remiasz bankruptcies were filed, Linnemann and Gervais purchased all of First American's right, title and interest to the loan First American made to Mission Bay. Thereafter, Linnemann and Gervais repeatedly demanded that Post pay the amounts due under the note and guaranty. Post refused.

On April 3, 2008, Linnemann and Gervais filed an action in the McHenry County Circuit Court seeking $963,373.76 in damages from Post for his breach of the guaranty. On May 13, 2008, Post filed a timely notice removing the action to the bankruptcy court pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027. (Lukasz Remiasz also joined in the notice, although he was not a party and so had no right to remove.) Following removal, Post filed an answer to the complaint and a counterclaim. Linnemann and Gervais answered the counterclaim and asserted affirmative defenses.

In June 2008, Linnemann and Gervais moved to remand the action to the state court. The principal contention in the motion is that the bankruptcy court lacks subject matter jurisdiction over the removed action pursuant to 28 U.S.C. § 1334(b). Because the action is "related to" the Mission Bay bankruptcy, the motion to remand will be denied.

#### 2. Discussion

Bankruptcy jurisdiction exists only over claims that either "arise under" title 11 or that "arise in" or are "related

to" a case under title 11. *See* 28 U.S.C. § 1334(b). Post does not contend that the claim of Linnemann and Gervais either arises under title 11 or in a case under title 11, and he is correct. The claim does not arise under title 11 because it is a state law claim, not a claim "created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987). The claim also does not arise in a case under title 11 because it does not concern "administrative matters that arise *only* in bankruptcy cases." *Id.* at 97 (internal quotation omitted) (emphasis in original). The question, then, is whether the claim is "related to" the Mission Bay bankruptcy.

■ The Seventh Circuit interprets "related to" jurisdiction more narrowly than other circuits. The court does so "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir.1996); *see also Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989). The court has also expressed concern about the seemingly unlimited breadth of the phrase "related to" "in a universe where everything is related to everything else." *FedPak*, 80 F.3d at 214 (internal quotation omitted). Bankruptcy jurisdiction, the court has said, "extends no farther than its purpose." *Elscint v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987). That purpose is "to provide a single forum for dealing with all claims to the bankrupt's assets." *Id.*

■ In this circuit, then, a dispute is "related to" a bankruptcy only if it "affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *FedPak*, 80 F.3d at 213–14 (internal quotation omitted); *see also In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1991);

*Xonics*, 813 F.2d at 131. That a dispute might have some tenuous connection with the debtor or overlap with the debtor's affairs is not enough. *Cooper & Cooper*, 889 F.2d at 749. Under this restrictive definition, not surprisingly, one non-debtor's action for damages against another non-debtor is typically not a matter over which a bankruptcy court can exercise jurisdiction. *See, e.g., Wayne Film Sys. Corp. v. Film Recovery Sys. Corp.*, 64 B.R. 45, 52–53 (N.D.Ill.1986); *In re O'Malley*, 252 B.R. 451, 458–59 (Bankr.N.D.Ill.1999).

Jurisdiction over such an action will exist, however, when the non-debtor plaintiff is a creditor in the bankruptcy case and recovery in the action will reduce its claim against the bankruptcy estate. Reduction of the creditor's claim leaves more estate property for other creditors and so affects the amount of property for distribution. Although one recent decision expressly rejects this theory, *see Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.)*, 308 B.R. 311, 317 (Bankr.N.D.Ill.2004), the court of appeals acknowledged its validity in *Xonics*. *See Xonics*, 813 F.2d at 132; *see also Gourmet Center, Inc. v. Fox (In re Sage Enters., Inc.)*, No. 04 B 5548, 04 A 3014, 2006 WL 1722582, at *10 (Bankr.N.D. Ill. April 28, 2006) (noting that *Xonics* holds open "the possibility that the mere potential reduction of a claim resulting from a third party dispute may constitute a sufficient effect on the estate to confer jurisdiction").

■ Should Linnemann and Gervais recover on their claim against Post for breach of the guaranty, it will affect the amount of property available to creditors from the Mission Bay estate. Linnemann and Gervais are creditors of debtor Mission Bay: they have a claim against Mission Bay on the note. Post guaranteed the obligations of Mission Bay on the note and

so is potentially liable to Linnemann and Gervais on the guaranty. But a creditor on a guaranteed obligation is entitled to only one performance. *See* 23 Richard A. Lord, *Williston on Contracts* § 61:11 at 39 (4th ed.2002). When the principal pays the obligation, the creditor cannot also recover from the guarantor; the guarantor is instead discharged. *See Palen v. Cullom Capital Woodworking, Inc.,* 154 Ill.App.3d 685, 687, 107 Ill.Dec. 171, 506 N.E.2d 1062, 1063 (4th Dist.1987). And although there seems to be a dearth of authority on the subject, the converse must also be true: when the guarantor pays, the principal's obligation to the creditor is likewise discharged. Should Linnemann and Gervais recover from guarantor Post in the removed action, then, their claims against principal Mission Bay in the bankruptcy will be reduced accordingly. And with their claims in the bankruptcy reduced, more property will be available for distribution to other creditors. Under *Xonics,* that effect confers jurisdiction over the action.

■ This result follows despite a rule of guaranty law that would require a different outcome in another case. When a guarantor pays his principal's obligation, the principal may be discharged as far as the creditor is concerned, but the guarantor acquires rights against the principal to be reimbursed for the amounts the guarantor paid on the principal's behalf. *See Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.,* 31 F.3d 445, 447 (7th Cir.1994); *Voltz v. National Bank of Ill.,* 158 Ill. 532, 542, 42 N.E. 69, 72 (1895); Peter A. Alces, *The Law of Suretyship and Guaranty* § 6:13 at 6–16 (2003). If that rule applied here, if Post were found liable in the removed action, and if Post paid Mission Bay's obligation on the note, he would be subrogated to the claim of Linnemann and Gervais against Mission

Bay. Having paid Mission Bay's obligation to Linnemann and Gervais, in other words, Post would simply substitute for them, assuming their claim in the bankruptcy case. The identity of the creditors would change, but the claims in the bankruptcy would remain the same. There would be no effect on the distribution of estate property.

But the reimbursement rule of guaranty law does not apply here because the guaranty itself preludes it. Paragraph 5 of the guaranty provides in part:

> Notwithstanding any payments made by or for the account of the undersigned pursuant to this Guaranty, the undersigned shall not be subrogated to any rights of the Bank. The undersigned hereby waive all rights of subrogation, indemnity, contribution, exoneration, reimbursement or other claim which the undersigned now or may hereafter have or claim against the Borrower or any other person liable in any way with respect to the Obligations.

This waiver resembles an "anti-*Deprizio* waiver," designed to contract around the result in *Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186 (7th Cir.1989). Before BAPCPA's enactment, courts differed over the validity of these waivers for purposes of section 547(b)(1). *Compare O'Neil v. Orix Credit Alliance, Inc. (Northeastern Contracting Co.),* 187 B.R. 420, 422–23 (Bankr.D.Conn.1995) (enforcing waiver), *with Russell v. Jones (In re Pro Page Partners LLC),* 292 B.R. 622, 630–31 (Bankr.E.D.Tenn.2003) (declining to enforce waiver). There is no reason, however, to doubt the validity of the waivers under Illinois law. *See Northeast Ill. Regional Commuter R.R. Corp. v. Chicago Union Station Co.,* 358 Ill.App.3d 985, 996, 295 Ill.Dec. 63, 832 N.E.2d 214, 224 (1st Dist.2005) (noting that any contractual right can be waived).

The only remaining question is whether Mission Bay can enforce the waiver against Post should he be found liable on the guaranty and end up paying Mission Bay's obligation under the note. That question arises because the waiver is a provision of the guaranty, and the guaranty is a contract between Linnemann and Gervais (as assignees of First American Bank) on the one hand and Post on the other. Mission Bay is not a party. So Mission Bay can enforce the waiver only if Mission Bay is a third-party beneficiary of the guaranty.

Under Illinois law, there is a strong presumption against conferring contractual rights on third parties. *Quinn v. McGraw–Hill Cos.*, 168 F.3d 331, 334 (7th Cir.1999); *Estate of Willis v. Kiferbaum Constr. Corp.*, 357 Ill.App.3d 1002, 1007, 294 Ill.Dec. 224, 830 N.E.2d 636, 642 (1st Dist.2005). A third party has no rights unless a provision of the contract was intentionally included for the direct benefit of that party. *Willis*, 357 Ill. App.3d at 1008, 830 N.E.2d at 643. Express language in the contract identifying the third-party beneficiary is the best evidence of an intent to benefit that party. *Quinn*, 168 F.3d at 334; *Wallace v. Chicago Housing Auth.*, 298 F.Supp.2d 710, 724 (N.D.Ill.2003).

The express language of the guaranty here manifests an intent to benefit Mission Bay. Under paragraph 5, Post waived whatever subrogation, reimbursement, and other rights he might have "against the Borrower." The prefatory paragraph in turn defines "Borrower" as "Mission Bay Ski & Bike, Inc." Because Mission Bay is specifically identified in the guaranty, there is little doubt the parties intended the waiver to benefit Mission Bay. When two parties agree to waive rights against a non-party, courts generally find the non-party to be a third-party beneficiary enti-

tled to enforce the waiver. *See, e.g., Shaw Constructors v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 538–39 (5th Cir.2004); *Osborne v. Howard Univ. Physicians, Inc.*, 904 A.2d 335, 342–43 (D.C.2006); *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 826 n. 4 (Mo.Ct.App.2004); *Pratt–Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 830–31 (Tex.App.2003).

The result might be different if the waiver here were a true anti-*Deprizio* waiver. An anti-*Deprizio* waiver is designed to prevent insider-guarantors of a debtor from incurring preference liability under section 547(b), *see Pro Page Partners*, 292 B.R. at 630, and so is meant to benefit the guarantor (the party waiving its rights) rather than the debtor (the recipient of the waiver). But Congress amended section 547 in 2005 to overrule *Deprizio*. *See generally Official Comm. of Unsecured Creditors v. Bank of Am., N.A. (In re ABC–NACO, Inc.)*, 331 B.R. 773, 777–78 (Bankr.N.D.Ill.2005) (discussing 1994 and 2005 Bankruptcy Code amendments). The guaranty here was signed in February 2007. It seems unlikely the parties here were trying to contract around a case that had been statutorily overruled more than a year before. No party contends that they were, and no evidence to that effect has been offered.

Because any recovery by Linnemann and Gervais on their breach of contract action against Post will reduce their claim in the Mission Bay bankruptcy, the action is "related to" the bankruptcy, and the court has subject matter jurisdiction under section 1334(b).

### 3. Conclusion

The motion of William Linnemann and Valerie Gervais to remand this action to the Circuit Court for the 22nd Judicial

Circuit, McHenry County, Illinois, is denied.